OPINION
{¶ 1} Defendant-appellant/Cross-appellee Davidson Industries, Inc. appeals from the December 15, 2003, Judgment Entry of the Stark County Court of Common Pleas. Plaintiff-appellee/Cross-Appellant William McMillin has filed a cross-appeal.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 21, 2000, appellee William McMillin filed a complaint against appellant Davidson Industries, Inc. and National Stamping, Inc., among others. Appellee, in his complaint, alleged that he was injured while operating machinery while in the course of his employment with one or more of the defendants, including appellant Davidson, Inc. and National Stamping, Inc.
 {¶ 3} Subsequently, on February 14, 2003, appellee filed a Motion to Enforce Settlement Agreement, alleging that, as a result of mediation, a settlement agreement had been reached between the parties to settle appellee's intentional tort claim against appellant Davidson Industries, Inc. and National Stamping, Inc. Appellee specifically alleged that the parties, to settle the matter, agreed that "defendant [National Stamping] would transfer its interest in certain real property to the plaintiff [appellee], together with a cash payment of five thousand dollars" . . . and that such transfer "has not been forthcoming despite this agreement being reached nearly two (2) years ago." The settlement had never been put on the record.
 {¶ 4} A hearing on appellee's motion was held on October 9, 2003. At the hearing, Judge Reinbold, who had been assigned to the case, but had recused himself after the motion to enforce settlement had been filed since he was involved in the settlement of this matter, testified. The Judge testified that, as a way of settling the case, the parties agreed that a building in Alliance owned by National Stamping would be transferred to appellee and that the lien on the same would be satisfied so that the building could be sold to satisfy the judgment. The Judge further testified that the building was "the only asset that the Defendants [Davidson Industries and National Stamping] had that could be converted to some type of money". Transcript at 16.
 {¶ 5} At the hearing, appellee testified that, at the time of the accident he was employed by "Davidson Industries, National Stamping" and that his paycheck came from Davidson Industries. Transcript at 29.
 {¶ 6} William Davidson, who is President of both appellant Davidson Industries and National Stamping, testified at the hearing that, at the mediation, the parties agreed that the building in Alliance owned by National Stamping would be transferred and that the $50,000.00 lien[1]
on the same would be cleared up by National Stamping so that the property could be transferred to appellee free and clear. Testimony was adduced that, after the mediation, the lien was never satisfied and that Sky Bank foreclosed on the building. Davidson further testified that, as part of the settlement agreement, appellee was to receive $5,000.00 for operating expenses to keep the building heated during the winter, but that such money was never paid. Davison also testified that the building was worth "somewhere in the 80's . . ." and that he would have taken "80 or 90" for the building.[2] Transcript at 101.
 {¶ 7} Pursuant to a Judgment Entry filed on December 15, 2003, the trial court granted appellee's motion to enforce the settlement agreement and ordered appellant Davidson Industries and National Stamping, Inc. to pay appellee the sum of $90,000.00 plus interest from the date of judgment. The trial court found that both appellant Davidson Industries and National Stamping made an agreement to settle the lawsuit. The trial court, in its entry, found, in relevant part, as follows:
 {¶ 8} "Here, the parties, William P. McMillin, as plaintiff, and Davidson Industries, Inc. and National Stamping, Inc., as defendants, voluntarily entered into a binding contract in settlement of this workplace intentional tort action for the amount of ninety thousand ($90,000) dollars, the value of the Alliance, Ohio, property on the date of settlement. The amount of five thousand ($5,000) dollars is not part of the enforcement of settlement motion as such monies were related to the expense of winterizing the Alliance property, which expense did not accrue."
 {¶ 9} It is from the December 15, 2003, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 10} "I. The trial court erred in finding that impossibility of performance does not preclude an order of enforcement and specific performance is not involved.
 {¶ 11} "II. The trial court erred in finding that rescission is not an equitable remedy in this action under the facts adduced.
 {¶ 12} "III. The trial court erred in finding that the parties entered into a binding contract for the settlement of the action for the amount of ninety thousand ($90,000) dollars.
 {¶ 13} "IV. The trial court erred in rendering judgment against Davidson Industries, Inc. for the failure of the co-defendant national stamping, inc. to convey its property to appellee, william McMillin."
 {¶ 14} Appellee raises the following assignments of error on cross-appeal:
 {¶ 15} "I. The trial court erred in failing to award Plaintiff-Appellee/Cross Appellant William P. McMillin the $5,000 cash payment contemplated under the settlement agreement.
 {¶ 16} "II. The trial court erred in failing to award Plaintiff-Appellee/Cross Appellant William P. McMillin statutory interest from the date of the settlement agreement as required under R.C. 1343.03."
 Standard {¶ 17} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends primarily on the question presented. If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding. Chirchiglia v. Ohio Bur. of Workers' Comp. (2000),138 Ohio App.3d 676, 679, 742 N.E.2d 180. "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Rulli v. FanCo., 79 Ohio St.3d 374, 1997-Ohio-380, 683 N.E.2d 337, syllabus. If the dispute is a question of law, an appellate court must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. Continental W. Condominium Owner's Assn. v.Howard E. Ferguson, Inc., 74 Ohio St.3d 501, 502, 1996-Ohio-158,660 N.E.2d 431.
 I {¶ 18} Appellant, in its first assignment of error, argues that the trial court erred in finding that "specific performance is not involved and impossibility of performance does not hinder any order for enforcement of settlement."
 {¶ 19} As an initial matter, we note that appellant takes issue with the procedure followed by the trial court. In the case sub judice, there is no dispute that the terms of the settlement were not memorialized on the record. In Bolen v. Young (1982), 8 Ohio App.3d 36, 37-38,455 N.E.2d 1316, the court stated, in relevant part, as follows: "[w]here an agreement is purportedly arrived at in the presence of the trial judge and approved by the parties, but its terms are not memorialized on the record and one of the parties later disputes the terms of the agreement by refusing to approve an entry journalizing the agreement, the trial judge may not adopt the terms of the agreement as he recalls and understands them in the form of a judgment entry. Instead, the party disputing the agreement is entitled to an evidentiary hearing before another judge . . . — in which the trial judge may be called as a witness to testify as to his recollection and understanding of the terms of the agreement — and, if the court concludes that the parties entered into a binding contract, the settlement may be enforced. . . . If the settlement agreement is extrajudicial in the sense that the trial judge is advised that the parties have agreed to a settlement, but he is not advised of the terms of the agreement, then the settlement agreement can be enforced only if the parties are found to have entered into a binding contract." (Citations omitted).
 {¶ 20} In the case sub judice, the trial court held an evidentiary hearing before another judge as required by Bolen. In addition, the trial judge was called as a witness at such hearing. Thus, the procedure set forth in Bolen was followed by the trial court.
 {¶ 21} In Bolen, the court also addressed the appropriate avenue for seeking enforcement of a settlement agreement, stating that "relief may be sought through the filing of an independent action sounding in breach of contract, or it may be sought in the same action through a supplemental pleading filed pursuant to Civ. R. 15(E), setting out the alleged agreement and breach." Id. at 38. A motion to enforce a settlement made pursuant to Civ. R. 15(E) may only be filed prior to the entry of a final judgment. See Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34, 470 N.E.2d 902 and Frank J. Catanzaro Sons Daughters, Inc. v. Tri Food Distrib., Inc. (April 27, 2001), Hamilton App. No. C-000584, 2001 WL 488829. Such a motion is inappropriate after an entry adjudicating all the claims in dispute has been filed.
 {¶ 22} In the case sub judice, appellee, in accordance with Civ. R. 15(E), filed a motion to enforce settlement, setting out the alleged argument and breach. As a result of the hearing, the trial court, in the case sub judice, found that the parties, in settlement of this matter, had agreed that certain property would be transferred free of lien to appellee, that such property, which William Davidson opined was worth between $80,000 and $90,000, was never transferred to appellee, and that the property had since been foreclosed upon and was not legally available to transfer. The trial court further stated, in its entry, that "[t]he value to the property is at issue in this action to enforce settlement, not the parcel itself" and that, for such reason, "specific performance is not involved and impossibility of performance does not hinder any order for enforcement of settlement."
 {¶ 23} At the hearing in this matter, Judge Reinbold testified that the building "seemed to be the only asset that Defendants had that could be converted to some type of money." Transcript at 16. The Judge further testified that the understanding was that the building would be sold "and whatever money they got from that building was going to go to satisfy the judgment . . ." Transcript at 17-18. William Davidson further indicated that he thought the proceeds from the sale of the building were to be used towards the settlement. Transcript at 100. Based on the foregoing, we concur with the trial court that the value of the property was at issue, rather than the specific parcel itself, and that the impossibility of transferring that specific piece of property does not preclude an order of enforcement of the settlement agreement.
 {¶ 24} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 25} Appellant, in its second assignment of error, argues that the trial court erred in finding that "rescission is not an equitable remedy in this action under the facts adduced." We disagree.
 {¶ 26} Appellant, in support of its argument, contends that the agreement between the parties is impossible to perform because the building has been sold and that, since appellant is barred from performing by impossibility, rescission should be available. Based on our disposition of appellant's first assignment of error, appellant's second assignment of error is overruled.
 III {¶ 27} Appellant, in its third assignment of error, maintains that the trial court erred in finding that the parties entered into a binding contract for the settlement of the action for $90,000. We disagree.
 {¶ 28} As is stated above, Judge Reinbold, at the hearing on the motion to enforce, testified that the building "seemed to be the only asset that Defendants had that could be converted to some type of money" and that the understanding was that the building would be sold "and whatever money they got from that building was going to go to satisfy the judgment . . ." Transcript at 16, 17-18. At the hearing, William Davidson further testified that he thought the proceeds from the sale of the building were to be used to satisfy the settlement. Transcript at 100. In short, as argued by appellee, the "record supports a finding that the parties understood they were settling a claim for money damages." With respect to the value of the building, William Davidson, the owner of the same, testified that the value of the building was at least $80,000 and that he would have taken between $80,000.00 and $90,000.00 for the building.
 {¶ 29} Based on the foregoing, appellant's third assignment of error is overruled.
 IV {¶ 30} Appellant, in its fourth assignment of error, argues that the trial court erred in holding that Davidson Industries was bound by, and liable under, the settlement agreement. Appellant specifically contends that the trial court erred in rendering judgment against Davidson Industries after National Stamping failed to convey its property to appellee. We disagree.
 {¶ 31} The trial court, in its December 15, 2003, Judgment Entry, specifically found that appellee, appellant Davidson Industries, and National Stamping "made an agreement to settle this lawsuit in May 2001, . . . and that William Davidson was in attendance at the settlement mediation `in his capacity as president of both Davidson Industries and National [Stamping].'" Appellant does not deny that it was a party to the settlement agreement. At the hearing on the motion to enforce settlement, William Davidson testified that he appeared at the settlement conference on behalf of both National Stamping and appellant Davidson Industries. William Davidson further testified that, because he was concerned about having a judgment entered against appellant Davidson Industries, the settlement documents were to be drawn up so that such judgment "would not show that." Transcript at 89.
 {¶ 32} Since there was evidence that both appellant Davidson Industries and National Stamping had entered into the settlement agreement, we find that the trial court did not err in holding that appellant Davidson Industries was bound by, and liable under the same.
 {¶ 33} Appellant's fourth assignment of error is, therefore, overruled.
 CROSS-APPEAL {¶ 34} Appellee, in his first assignment of error on cross-appeal, contends that the trial court erred in declining to award appellee the $5,000.00 cash payment contemplated under the settlement agreement. We disagree.
 {¶ 35} As is stated above, testimony was adduced at the October 9, 2003, hearing that appellee was to receive $5,000.00 for operating expenses to keep the building heated during the winter so that the pipes would not burst. William Davidson testified that the $5,000.00 was for operating expenses or heating costs throughout the winter. We concur with appellant that the record shows that the parties understood that the receipt of the $5,000 was conditioned on the accrual of winterization costs of the property. Since, however, the building was never transferred to appellee due to foreclosure, such costs were never accrued by appellee. Appellee, therefore, was not entitled to the $5,000.00.
 {¶ 36} Appellee's first assignment of error is, therefore, overruled.
 II {¶ 37} Appellee, in his second assignment of error on cross-appeal, asserts that the trial court erred in failing to grant interest from the date of the May 15, 2001, settlement agreement under R.C. 1343.03. We agree.
 {¶ 38} The relevant version of R.C. 1343.03(A) states, in relevant part, as follows: "when money becomes due and payable . . . upon any settlement between parties, . . . the creditor is entitled to interest at the rate of ten per cent per annum, . . ., unless a written contract provides a different rate of interest . . ." Pursuant to R.C. 1343.03(A), a plaintiff who enters into a settlement agreement that has not been reduced to judgment is entitled to interest on the settlement, which becomes due and payable on the date of settlement. Hartmann v. Duffey,95 Ohio St.3d 456, 456, 2002-Ohio-2486, 4, 768 N.E.2d 1170, syllabus. InHartmann, supra, at 459, the court stated as follows: "The plain language of R.C. 1343.03(A) states that money becomes due and payable "upon any settlement between parties." Thus, pursuant to the above statute, appellee was entitled to interest at the statutory rate of ten per cent (10%) per annum from May 15, 2001, the date of settlement, on the $90,000.00.
 {¶ 39} Appellee's second assignment of error on cross-appeal is, therefore, sustained.
 {¶ 40} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part. Upon remand, the trial court shall enter an order granting interest from May 15, 2001, the date of the settlement agreement.
Edwards, J. and Farmer, J. concur. Hoffman, P.J. concurs separately.
[1] Sky Bank had a mortgage lien on the building.
[2] The building had been offered for sale for over $100,000.00, but was never sold.