OPINION
{¶ 1} Appellant Tamara Bernabei appeals the decision of the Stark County Court of Common Pleas that denied her motion to enforce settlement agreement. The following facts give rise to this appeal.
 {¶ 2} On September 24, 1998, appellant's spouse, Richard Bernabei, died in a motorcycle accident, on State Route 800, in Tuscarawas County. The tortfeasor's insurer, Liberty Mutual Insurance Company, paid its policy limits of $25,000. Thereafter, on September 25, 2000, appellant filed a wrongful death action seeking underinsured motorist benefits, under several insurance policies, pursuant to the Scott-Pontzer[1] andEzawa[2] decisions. At the time of his death, the decedent was employed at Hilscher-Clarke Electric Company ("Hilscher-Clarke"). Appellee Westfield Insurance Company ("Westfield") insured Hilscher-Clarke.
 {¶ 3} On September 13, 2004, this Court determined no coverage existed, under the policy Westfield issued to Hilscher-Clarke, pursuant to the Ohio Supreme Court's decision in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849. See Bernabei v. St. Paul Fire Marine Ins. Co., Stark App. No. 2003CA00346, 2004-Ohio-4901. Although the coverage issue has been decided in favor of Westfield, the appeal sub judice concerns whether a settlement agreement was entered into, at a mediation conducted on August 18, 2003. Attorney Joseph Calabretta served as the mediator. At the mediation, the parties made various settlement demands and offers, which the mediator conveyed to the parties.
 {¶ 4} According to Westfield, during the mediation process, it extended an offer to place $750,000 in a structure, which would be paid out under Westfield's underlying $1 million policy. In addition, Westfield would agree to waive its coverage defenses under the umbrella policy. Appellant would be required to waive arbitration. Further, Westfield and appellant would proceed to a jury trial on the umbrella policy. Westfield would be entitled to receive a $1 million set-off from any jury verdict. Prejudgment interest would be recoverable on the verdict. One essential element of this offer was a condition that all family members and beneficiaries, in addition to appellant, release any and all potential claims against Westfield and sign off on the settlement. The jury trial would involve only Westfield and appellant.
 {¶ 5} In consideration of a global release, Westfield would release any claims it had against the other insurers for pro rata contribution. Further, all of the claimants would be permitted to pursue anyMoore-Sexton claims they may have against the other insurers. According to Westfield, the parties never settled this matter because the family members refused to agree to any settlement and refused to provide a release to Westfield.
 {¶ 6} Thereafter, on August 19, 2003, Attorney Calabretta circulated a letter, to all counsel, in which he indicated the parties agreed that a second mediation would be beneficial. The parties scheduled a second mediation for December 12, 2003. Prior to the second mediation, on November 5, 2003, the Ohio Supreme Court issued the Galatis decision. On this same day, after the announcement of Galatis, appellant's counsel faxed a letter, to Westfield's attorney, stating, "This letter is to inform you that my client accepts the offer which was extended at mediation August 18, 2003, in the above-captioned matter. Please forward all necessary documentation to resolve this matter."
 {¶ 7} Westfield denied the existence of any settlement and on January 6, 2004, appellant filed a motion to enforce settlement agreement. In her motion, appellant alleges a settlement had been reached, at the mediation, on August 18, 2003. The trial court conducted a hearing, on appellant's motion, on April 1, 2004. Over the objection of Westfield, the trial court elicited testimony from the mediator, Attorney Calabretta. Attorney Calabretta testified that Westfield's settlement offer was conditioned upon a global release to be signed by appellant and the family members. Attorney Calabretta also testified the parties did not reach a settlement or partial settlement at the mediation.
 {¶ 8} Following the hearing, the trial court ruled from the bench and denied appellant's motion to enforce settlement agreement. The trial court memorialized its ruling, in a judgment entry, filed April 13, 2004. The trial court filed a judgment entry nunc pro tunc, on April 20, 2004, for the purpose of including Civ.R. 54(B) language. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 9} "I. The trial court committed error by denying appellant's motion to enforce the settlement agreement.
 {¶ 10} "II. The trial court committed error by failing to hold a hearing that comports with due process."
 I {¶ 11} In her First Assignment of Error, appellant contends the trial court committed error by denying appellant's motion to enforce the settlement agreement. We disagree.
 {¶ 12} Settlement agreements are considered contracts and, therefore, their interpretation is governed by the law of contracts. State v. Butts
(1996), 112 Ohio App.3d 683, 686. The burden of establishing the existence and terms of a settlement agreement rests on the party asserting its existence. Nilavar v. Osborn (1998), 127 Ohio App.3d 1,11. In addition to consideration, enforceable contracts also require certainty and clarity, as well as a meeting of the minds. Rulli v. FanCo. (1997), 79 Ohio St.3d 374, 376. A "meeting of the minds" occurs via an offer and an acceptance of the offer. Noroski v. Fallet (1982),2 Ohio St.3d 77, 79. Generally, conduct sufficient to show agreement, including performance, constitutes acceptance of an offer. Nagle Heating Air Conditioning Co. v. Heskett (1990), 66 Ohio App.3d 547, 550.
 {¶ 13} Further, when the alleged settlement agreement is verbal and not written, the existence and the terms of such agreement must be established by clear and convincing evidence. Pawlowski v. Pawlowski
(1992), 83 Ohio App.3d 794, 799. In determining whether an oral agreement has been established, the trial court may consider the words, deeds, acts, and silence of the parties. Kostelnik v. Helper (2002),96 Ohio St.3d 1, 3. Vagueness, indefiniteness or uncertainty as to any essential term of an agreement prevents the creation of an enforceable contract. Rulli at 376. However, if the parties proceed to act as if the contract was in effect, the contract is enforceable. Nagle at 550.
 {¶ 14} Finally, it should be noted that the offeror is the master of his offer and may require acceptance in precise conformity with his or her offer before a contract is formed. Mgmt. Recruiters of Marysville,Inc. v. Brown Group. Recreational Products, Inc. (1986),34 Ohio App.3d 72, 75.
 {¶ 15} We must now determine the applicable standard of review. InChirchiglia v. Ohio Bur. of Workers' Comp. (2000), 138 Ohio App.3d 676, the Seventh District Court of Appeals set forth the applicable standard of review as follows:
 {¶ 16} "The standard of review to be applied to rulings on a motion to enforce a settlement agreement depends primarily on the question presented. If the question is a factual or evidentiary one, this court has held that the trial court's finding will not be overturned if there was sufficient evidence to support such finding. [Citation omitted.] However, * * * where the issue is a question of contract law, reviewing courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. [Citation omitted.] The standard of review is whether the trial court erred. [Citation omitted.] Id. at 679.
 {¶ 17} In the case sub judice, we must determine whether the parties entered into a settlement agreement. This issue presents a question of contract law. Thus, we must determine whether the trial court erred, as a matter of law, in denying appellant's motion to enforce the settlement agreement.
 {¶ 18} In support of her contention that she accepted Westfield's offer, appellant relies upon the affidavit of her counsel, Attorney Larry Slagle, in which he states that appellant accepted Westfield's offer at the mediation. Attorney Slagle further states that he reiterated the acceptance of the offer when he talked, by telephone, with Westfield's counsel following the mediation. Appellant claims this verbal acceptance created an enforceable agreement and the trial court only needed to fill in the collateral terms of the settlement agreement.
 {¶ 19} Because appellant claims the parties entered into an oral settlement agreement, we must consider the words, deeds, acts and silence of the parties in determining whether such an agreement exists. For the following reasons, we conclude the parties' conduct establishes that a settlement agreement did not exist.
 {¶ 20} First, it is unclear when appellant allegedly accepted the proposed settlement agreement. The affidavit submitted, by appellant's counsel, indicates the proposed settlement agreement was initially accepted at the mediation conducted on August 18, 2003. However, in a letter faxed to Westfield's counsel, on November 5, 2003, counsel for appellant states that his client accepts the offer that was extended at mediation. Second, the parties left the mediation, on August 18, 2003, without any mediation agreement or report being signed. Third, the parties scheduled a second mediation for December 12, 2003, which would not have been necessary had the parties entered into a settlement agreement on August 18, 2003.
 {¶ 21} Fourth, besides the faxed letter dated November 5, 2003, no correspondence exists confirming, discussing, memorializing or referencing a settlement agreement or requesting any payment. Fifth, appellant never notified the trial court that a settlement had been reached and never initiated any probate court proceedings to approve the settlement. Sixth, appellant never challenged a statement Westfield made, in a motion for extension of time, filed in the appellate court, that stated the parties were "attempting to resolve the case by way of settlement, if possible" and noted that "if the case can be resolved at mediation on December 12, 2003," further proceedings in the appeal would be unnecessary.
 {¶ 22} Seventh, on August 19, 2003, the mediator, Attorney Calabretta, sent a letter to all counsel indicating the parties had agreed that a second mediation would be beneficial and asked the parties to inform him whether the second mediation would proceed and the date agreed upon for said mediation. Finally, at the evidentiary hearing conducted by the trial court, the mediator testified as follows concerning the existence of a settlement agreement:
 {¶ 23} "THE COURT: Had an agreement been reached from the first mediation? And can you explain to the extent that you feel that you can remember what, how the parties left at the end of that first mediation.
 {¶ 24} "THE WITNESS: There had not been an agreement reached. If there had been one, it would have been written up and signed by the parties, which is what I do in every mediation.
 {¶ 25} "The way it was left or the point that we were at to the best of my recollection was that an offer had been made by Westfield, which was supported by some documents from structured settlement person. I don't recall if there was one there; probably one was there, but in any event, it contained so much up-front cash and so much to be structured.
 {¶ 26} "I was talking or the offer was being made to settle the entire matter with all claimants that were there at the mediation. I was talking separately with the surviving spouse and her representative, her attorney, Mr. Slagle, and in another room I was talking with Stacy Roth and her clients which who were the, I believe the parents and siblings if I recall correctly.
 {¶ 27} "The siblings and parents wanted to be paid a certain amount which was considerably in excess of what the surviving spouse was willing to agree to, and therein is where the process broke down late in the day.
 {¶ 28} "THE COURT: All right. Let me ask you something, Mr. Calabretta. Had you settled with only a portion of the parties, would you have — what would you have done?
 {¶ 29} "THE WITNESS: I would have written up any partial settlement and had those people sign an agreement.
 {¶ 30} "THE COURT: And was that done in this case?
 {¶ 31} "THE WITNESS: It was not.
 {¶ 32} "THE COURT: And the reason that was not done?
 {¶ 33} "THE WITNESS: There was not a partial settlement." Tr. Hrng., Apr. 1, 2004, at 14-16.
 {¶ 34} Based upon the above, we conclude the trial court did not err when it denied appellant's motion to enforce the settlement agreement since the evidence establishes that the parties never entered into such an agreement, either at the mediation or anytime thereafter.
 {¶ 35} Appellant's First Assignment of Error is overruled.
 II {¶ 36} Appellant contends, in her Second Assignment of Error, the trial court committed error by failing to hold an evidentiary hearing that comports with due process. We disagree.
 {¶ 37} The trial court conducted an evidentiary hearing, in response to appellant's motion to enforce the settlement agreement, on April 1, 2004. Appellant claims the evidentiary hearing was not the type of hearing the courts are mandated to conduct when considering a motion to enforce settlement because only the mediator testified and appellant was not permitted to cross-examine the mediator or call any other witnesses. Appellant also claims the questioning of the mediator was insufficient to determine whether a settlement agreement existed because the mediator was unaware of a telephone conversation that occurred after the mediation, but prior to the Galatis decision.
 {¶ 38} A review of the transcript from the April 1, 2004 hearing indicates that appellant's counsel never objected to the manner in which the trial court conducted the hearing. Further, appellant's counsel never proffered any evidence regarding what other witnesses may have testified to concerning the existence of a settlement agreement. Finally, we note the trial court specifically indicated that in making her decision, she was not simply relying upon the personal recollection or testimony of the mediator. The trial court also considered the briefs, stipulations and attachments in reaching its decision. Tr. Hrng., Apr. 1, 2004, at 27-28. Accordingly, the hearing conducted by the trial court comports with due process.
 {¶ 39} Appellant's Second Assignment of Error is overruled.
 {¶ 40} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J. Hoffman, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
Costs assessed to Appellant.
[1] Scott-Pontzer v. Liberty Mut. Ins. Co., 85 Ohio St.3d 660,1999-Ohio-292.
[2] Ezawa v. Yasuda Fire Marine Ins. Co. of Am., 86 Ohio St.3d 557,1999-Ohio-124.