JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} In January 2006, plaintiff-appellee, Harvest Missionary Baptist Church, Inc., ("Harvest Missionary" or "the church") initiated an action against defendants-appellants Artis F. Caver ("Caver"), Dale Edwards ("Edwards"), Dejan Performing Arts and Learning Center, Inc. ("Dejan"), Consolidated Church Financial Co., LLC ("Consolidated Church"), and D E Communications, Inc. ("D E Communications") (collectively "the Edwards defendants"). Caver was the former pastor of the church and Edwards was an officer and/or owner of the remaining defendants.[1]
 {¶ 2} The record before us demonstrates that the underlying litigation began when Geauga Savings Bank initiated foreclosure proceedings against the church, which was in default of its $1,700 monthly mortgage payments. Caver apparently had sole control over the church and its finances and did not inform the members of the church and its trustees of the default status of the church's loan. The church's trustees and membership, however, eventually became aware of the status of the loan and that the church's building and property were scheduled for sheriff's sale. *Page 5 
 {¶ 3} The congregation confronted Caver, and in an attempt to redeem the church from foreclosure, he devised a plan to save the church. The plan required Edwards to loan money to the church to pay off its mortgage and the church to deed the property to Edwards' business, Dejan. It was the church's understanding that Dejan would merely "hold" the deed to the church as collateral for the loan, and would only file the deed as a "last resort." The trustees agreed to Caver's plan and entered into the purported loan transaction. Contrary to the church's understanding, Dejan filed the deed the day after it was executed. Edwards then attempted to lease the building back to the church for $9,100 per month for five years. The church refused to sign the lease agreement (Caver signed it, but the trustees would not). The church further contended that on the same day Dejan acquired the deed to the church, Edwards formed another company, Consolidated Church, which purchased the delinquent note and mortgage from Geauga Savings Bank for $225,000.
 {¶ 4} The church subsequently filed suit against Caver, Edwards, and the Edwards' defendants, alleging fraudulent transfer and seeking an accounting and money damages. One of the attorneys involved in the litigation, Robert Passov, who represented Edwards, Dejan, and D E Communications, became seriously ill during the pendency of the case. Attorney Anthony Cox represented the remaining Edwards defendant, Consolidated Church. Attorney Robert Smith, III represented Caver. *Page 6 
 {¶ 5} The case was originally set for a November 13, 2006 jury trial. On that date, Caver, Consolidated Church and the other Edwards defendants requested continuances.[2] The court granted the continuances based on attorney Passov's illness, and continued the case until December 1, 2006, stating, "at which time settlement discussions will resume." The docket indicates that "all counsel" were present for the December 1 hearing, and that trial was set for March 1, 2007. (A subsequent docket entry states that trial was set for March 2, 2007.)
 {¶ 6} On February 23, 2007, attorney Cox filed a notice of appearance on behalf of all the Edwards defendants. On that same date, attorney Cox also filed a motion for continuance, again, on behalf of all the Edwards defendants. Attorney Cox also filed a motion in limine and trial brief on behalf of Edwards.
 {¶ 7} Edwards and attorneys Cox and Smith appeared for trial; attorney Passov was not present. Edwards asked the court to continue the trial until April because attorney Passov was too ill to be present. The court denied Edwards' request, stating "[e]veryone was aware back in November 2006 that it might be that Mr. Passov could not continue with this case, so some contingency plans had or should have been made and apparently they weren't."
 {¶ 8} The case proceeded to a jury trial. Despite attorney Cox's previous filings, Edwards represented himself pro se, and Dejan and D E Communications *Page 7 
were not represented. Consolidated Church was represented by attorney Cox. On March 8, 2007, the parties purportedly reached a settlement. The agreement, as read into the record, was that Dejan would deed the church property back to Harvest Missionary in exchange for the church paying Edwards $30,000 at the rate of $500 per month. The transaction was to be evidenced by a promissory note and secured by a mortgage on the church premises. All claims against the Edwards defendants were to be dismissed with prejudice. The record indicates that each member of the Board of Trustees for Harvest Missionary was polled by telephone by its chairman, Robert Jackson; Jackson reported that each trustee approved the terms of the settlement. All parties participated in the settlement, including Edwards.
 {¶ 9} Further, Edwards, Caver (and his attorney Smith) and Consolidated Church (and its attorney Anthony Cox) met and worked out a purported settlement between Edwards' companies and Caver, the terms of which were to be confidential.[3]
 {¶ 10} On March 12, 2007, Edwards stated that he believed that what had occurred on March 8 were discussions of a possible settlement, and that the boards of the Edwards' companies did not agree to the terms of the proposed settlement. *Page 8 
Harvest Missionary made an oral motion to enforce the settlement agreement. The court then held an exhaustive evidentiary hearing in order to determine if the parties had, in fact, reached an agreement.
 {¶ 11} On March 15, 2007, the court granted the church's motion to enforce the settlement, outlined its terms, and retained jurisdiction to receive and approve a final written settlement document and to enter further orders necessary to effectuate the settlement. The settlement documents were subsequently drafted; the Edwards defendants refused to execute them.
 {¶ 12} The court issued an entry containing the final agreement. The judgment ordered the Edwards defendants to cooperate with the settlement agreement, and that upon their failure to cooperate, the church's attorney was given the authority, pursuant to Civ.R. 70, to prepare and execute a deed transferring the church property from Dejan to Harvest Missionary, and to execute and file all settlement documents. The court again retained jurisdiction to issue orders necessary for the implementation of the settlement.
 {¶ 13} The Edwards defendants failed to cooperate, and the church's attorney prepared, signed and recorded a warranty deed transferring the church property from Dejan to Harvest Missionary. Counsel for the church also dismissed all actions. The Edwards defendants raise six assignments of error for our review.
 {¶ 14} The sixth assignment of error reads as follows: *Page 9 
 {¶ 15} "Whether the trial court erred in ruling that the parties to the instant appeal had reached a settlement when appellants Dejan Performing Arts and Learning Center, Inc., and D E Communications of Ohio, Inc., (referred to throughout this litigation as WABQ Radio), were not represented by counsel and the Board of Trustees, respectively, of Dejan, Consolidated Church Financial Co., Ltd. and WABQ Radio did not approve such a settlement and in fact rejected such a settlement?"
 {¶ 16} Before addressing the settlement issue, implicit in this assignment of error is whether the trial court properly denied Edwards' request for a continuance of the trial, which resulted in Edwards, Dejan and D E Communications proceeding unrepresented by counsel. (These issues are raised in assignments of error three, four and five.)
 {¶ 17} The standard of review for the denial of a motion for continuance is whether the trial court abused its discretion. State v.Linger (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078, syllabus. An abuse of discretion is more than an error of law; it implies an attitude by the trial court that is arbitrary, capricious, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. This court must weigh the potential prejudice to a defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Linger at 67. TheLinger court further explained: *Page 10 
 {¶ 18} "In evaluating a motion for a continuance a court should note inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which give rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id. at 67-68.
 {¶ 19} This case, which was filed in January 2006, was originally set for trial in November 2006. Caver and the Edwards defendants, through attorneys Cox and Smith, filed continuances, which the court granted. At that time, the court and parties were aware that attorney Passov was seriously ill. In fact, the court stated the following in regard to attorney Passov's illness:
 {¶ 20} "I ask Mr. Edwards to be in touch with Mr. Passov and keep our fingers crossed that he's able to be here. Incidentally, if there's a continuing medical problem, with Mr. Passov, please let me know and we'll try to work out another time to be here."
 {¶ 21} Attorney Passov presumably was present for the December 1 settlement conference, when the March trial date was set. (The docket indicates that "all counsel" were present.) On the March trial date, attorney Passov was not present, however, which prompted Edwards to request a continuance. Edwards informed the court that he had attempted to reach attorney Passov, and after many *Page 11 
unsuccessful attempts, finally did just prior to the trial date. The court questioned attorney Cox as to whether he could represent Edwards and the remaining Edwards defendants. Attorney Cox indicated that he was not prepared to provide such representation (for Consolidated Church or the other remaining Edwards defendants), and sought a continuance.
 {¶ 22} The trial court did not abuse its discretion in denying the motion to continue. First, the record clearly indicates that all parties were aware of attorney Passov's illness beginning at least in November 2006. From that date until March 2007 afforded Edwards ample time to secure alternate counsel (or co-counsel) for himself and his companies.
 {¶ 23} Second, attorney Cox filed a notice of appearance on November 13, 2006, with respect to Consolidated Church, and also filed, on that same date, motions to continue and dismiss on its behalf. Thus, attorney Cox's representation to the court that he was not prepared to go forward with trial in March 2007, because he had just received the complaint, was not a valid ground to continue the case.
 {¶ 24} Moreover, on February 23, 2007, attorney Cox filed a notice of appearance in regard to all the Edwards defendants, and subsequently filed a motion in limine and trial brief on behalf of Edwards. (We also note that attorney Cox represented Dejan in the Cleveland Municipal Court case.)
 {¶ 25} Third, the record in this case suggests that all the defendants were a united front. Specifically, in addition to the just mentioned filings by attorney Cox, *Page 12 
attorney Smith filed a motion to continue on behalf of all the Edwards defendants on November 13, 2006. To that end, the trial court noted that it would probably be a week before the church rested its case and, therefore, that:
 {¶ 26} "there is an opportunity for preparation here and in these early stages, I think there is enough representation here and, Mr. Edwards, you could decide whether you want simply to represent yourself here or whether you want Mr. Cox to represent you and of course if at any point you bring in someone else, I will be happy to have that person here * * *."
 {¶ 27} On this record, we do not find that the trial court abused its discretion, and the third, fourth and fifth assignments of error are overruled. We now consider the trial court's enforcement of the settlement agreement.
 {¶ 28} The standard of review to be applied to a ruling on a motion to enforce a settlement agreement depends primarily on the question presented. Kaple v. Benchmark Materials, Seneca App. No. 13-03-60, 2004-Ohio-2620, ¶ 4. If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding. Chirchiglia v. Bur of Workers'Comp. (2000), 138 Ohio App.3d 676, 679, 742 N.E.2d 180. If the dispute is a question of law, an appellate court must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law. Continental W. Condominium *Page 13 Unit Owners Assn. v. Howard E. Ferguson, Inc., 74 Ohio St.3d 501, 502,1996-Ohio-158, 660 N.E.2d 431.
 {¶ 29} Settlement agreements are contractual in nature and, as such, basic principles of contract law apply. Rulli v. Fan Co. (1997),79 Ohio St.3d 374, 683 N.E.2d 337. "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear." Id. at 376. If the terms of a settlement agreement are disputed or there is a dispute about the existence of a settlement agreement, the trial court must hold an evidentiary hearing prior to confirming the settlement. Id.
 {¶ 30} The court held a hearing in this case and determined that the parties entered into a valid settlement agreement. We agree.
 {¶ 31} Appellants first argue that the settlement agreement was not valid because Edwards, Dejan, and D E Communications were unrepresented by counsel. Edwards, in his individual capacity, certainly could represent himself.
 {¶ 32} In regard to Dejan and D E Communications, the Ninth Appellate District addressed this issue in Baird v. SDG, Inc., Wayne App. No. 03CA00071, 2004-Ohio-3705. In Baird, the appellant claimed that a settlement agreement he signed to resolve the case was void because the court allowed him, a non-attorney, to represent his company in requesting a scheduling change, and he did not have an attorney present to explain the implications of the settlement agreement. The court held that neither activity constituted practicing law and, therefore, there was no *Page 14 
requirement for an attorney. Based on Baird, the settlement agreement was not void because of Dejan and D E Communications' lack of representation.
 {¶ 33} Appellants' second argument as to why the settlement agreement was void is that the court lost jurisdiction when it denied the requests for a continuance. Appellants' argument is unsupported by any case law and is simply without merit. Appellants' third and final argument as to why the agreement was void is that Edwards did not have authority to bind Dejan and D E Communications. We are not persuaded.
 {¶ 34} The record in this case demonstrates that the Edwards companies were under the control of Edwards and that he held himself out as having the authority to act on their behalf. A review of the portion of the transcript where the parties put the settlement on the record specifically demonstrates that Edwards was acting on his own behalf and the behalf of his companies to settle the dispute. Further, there is no indication that it was Edwards' belief that what was being put on the record was tentative or a mere proposed settlement. In fact, it was not until the second day of testimony at the hearing on the motion to enforce the settlement that Edwards produced a "resolution" from the trustees of Dejan (who are Edwards' family members) rejecting the settlement. The credibility of that resolution was, therefore, put in doubt. The record supports the trial court's finding that Edwards had the authority to bind the Edwards defendants and that an agreement had been reached. Accordingly, the sixth assignment of error is overruled. *Page 15 
 {¶ 35} A valid settlement agreement terminates litigation in a case and any errors leading up to the settlement are not appealable.Medina v. Bhoaty (Mar. 5, 1997), Medina App. No. 2572-M, 3. Because we find that there was a valid settlement in this case, the remaining assignments of error are moot and we decline to address them. App.R. 12(A)(1)(c).
 {¶ 36} Judgment affirmed in Case No. 89921; Case Nos. 89873 and 90149 dismissed.
 {¶ 37} It is ordered that in Case No. 89921, appellee Harvest Missionary Baptist Church recover from appellants Dale Edwards and Consolidated Church Financial Co. costs herein taxed. It is ordered that in Case No. 89873, appellee Harvest Missionary Baptist Church recover from appellant Geauga Savings Bank costs herein taxed. It is ordered that in Case No. 90149, appellee Harvest Missionary Baptist Church recover from appellant Dejan Performing Arts and Learning Center, Inc., costs herein taxed.
 {¶ 38} The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 16 
FRANK D. CELEBREZZE, JR., J., CONCURS; SEAN C. GALLAGHER, P.J., CONCURS IN PART AND DISSENTS IN PART
[1] Three actions were consolidated on appeal: common pleas court case numbers CV-502845 and CV-582518 and municipal court case number 2006 CVG 13942. The judgment in CV-582518 (Court of Appeals No. 89921), however, is the only judgment upon which appellants have advanced any argument as to error. The other two cases (CV-502845, Court of Appeals No. 89873 and 2006 CVG 13942, Court of Appeals No. 90149) are therefore dismissed, as no allegations as to error have been made.
[2] Attorney Cox filed on behalf of Consolidated Church and Attorney Smith filed on behalf of Caver and all of the Edwards defendants, including Consolidated Church.
[3] As will be set forth later, the court held a hearing on the church's motion to enforce the settlement. The testimony at the hearing established that Edwards would receive from Caver $50,000 within 45 days, with the remainder of $290,000 to be paid at the rate of $4,000 per month. Edwards would also receive a promissory note secured by mortgages on the homes of two members of Caver's new church. Upon payment of the settlement, Caver was to receive a release as to all claims.