# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### HARRISON COUNTY

U.S. BANK NATIONAL ASSOCIATION SUCCESSOR
BY MERGER TO U.S. BANK NATIONAL ASSOCIATION ND.,

Plaintiff-Appellant,

v.

UNKNOWN HEIRS AND DEVISEES OF HOLLY L. MILLER
AKA HOLLY LEE MILLER, DECEASED ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 HA 0005**

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVE 2017-0103

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded

---

*Atty. Gregory Stout* and *Atty. John Tarter,* Reisenfeld & Associates, LPA, LLC, 3962 Red
Bank Road, Cincinnati, Ohio 45227, for Plaintiff-Appellant and

*Atty. Mark Beetham,* 146 South Main Street, P.O. Box 128, Cadiz, Ohio 43907, for Defendants-Appellees.

Dated:
June 25, 2021

**Donofrio, J.**

{¶1} Plaintiff-appellant, U.S. Bank National Association, appeals from a Harrison County Court of Common Pleas judgement commanding specific performance of a purported settlement agreement with defendants-appellees, the Unknown Heirs and Devisees of Holly Miller, Clyde Miller, Jerry Miller, and their unknown spouses.

{¶2} Holly Miller and his wife Barbara Miller owned a parcel of real estate at 85424 Normal Street Extension in Harrison County, Ohio. On June 30, 2004, Holly Miller executed a promissory note in the amount of $42,000.00. In order to secure payment of the note, the Millers took a mortgage on real property. The mortgage was recorded on July 26, 2004. The mortgage is currently held by appellant.

{¶3} Barbara Miller died in 2004. Holly Miller continued to make monthly payments to appellant on the mortgage until his death on October 9, 2016. When Holly ceased making payments, appellant filed this action seeking to foreclose the mortgage.

{¶4} On September 18, 2019, during a pre-trial conference, the court inquired about settlement of the case. Appellees' attorney, responded:

> I've spoken with my clients and the real estate was appraised in the estate proceedings at $75,000.00. So if they will pay us $37,500 we will give them a deed for the real estate. They claim to be owed on the order of 27. So they'll be 10 to the good and my clients will not have to fiddle around with this. I'm sure these guys know how to sell stuff (inaudible).

(Sept. 18, 2019 Tr. 6-7). In response, the court stated:

> That's movement. At least we have an offer and something to talk about. I didn't ask for people with settlement authority here today so I don't expect you to give me an answer but that's something to look at before we go

through a bunch of discovery and waste a lot of trees to write briefs. So if you want to think about that let me know.

(Sept. 18, 2019 Tr. 7).

{¶5} On November 23, 2019, appellant's former paralegal, who appellant identifies as Stacy (sic), sent the following email to appellees' counsel:

My name is Macy and I am the Paralegal assisting Attorney Glenn Algie with this case. Our records indicate that you appeared at the Status Conference for this case on September 18, 2019. At the Status Conference, you had previously made a proposed offer to our Counsel, to deed U.S. Bank the property in this Foreclosure, which had been appraised at $75,000, for a payment of $37,500.00. We have since been in contact with our Client regarding this offer, and we are reaching out to confirm if this is something you would still like to offer. If you would still like to offer this, we will get all necessary documents ready for this and will be in contact regarding the necessary steps for moving this forward. Please review and advise at your earliest convenience.

(Algie Aff., Ex. A).

{¶6} On November 25, 2019, counsel for appellees responded:

I have spoken with the representative of the Estate of Holly Miller, and the estate is still willing to proceed with its settlement offer: Your client can purchase the real estate for $37,500.00 payable to the Estate and will receive a fiduciary's deed for all of the Estate's interest in the property subject to the mortgage to your client, and the foreclosure action and any claim against the defendants will be dismissed. The Estate will pay deed preparation, conveyance fee, and pro-rated real estate taxes. Your client will pay tax map transfer fee and recording cost. Any closing fee for closing the transfer will be divided equally between the parties. Please confirm that that is acceptable to your client so we can get about the business of preparing the documents we will need to complete this matter. Thanks.

Case No. 20 HA 0005

(Algie Aff., Ex. B).

{¶7} Appellant contended that these communications did not comprise a settlement agreement but rather were only settlement discussions. The following exchange occurred between appellant's attorney and the court:

> MR. ALGIE: Judge, the only thing I would say, I'm not saying -- I'm saying my legal assistant can not [sic.] bind the client. I did not say that that communication did not come from my office. I acknowledge it came from my office. She can not [sic.] bind the client. She's inquired is it still on the table.
>
> THE COURT: She's speaking for the client. My reading is clear. She says, "We've been in contact with our client regarding this offer" and as I read what she says, she says that the client's good with that offer and we're reaching out to you to make sure it's still there because we want to do it.
>
> MR. ALGIE: That was not her intent.
>
> THE COURT: I think anybody who has a clear reading -- if you look at the four corners of this document, that is you've admitted that's an email from your office, I don't know anybody could read it any different. It doesn't look like there would be anything anybody else would need to do but say yes, let's go for it.

(May 20, 2020 Tr. 14).

{¶8} On August 12, 2020, the trial court issued a judgment entry finding that the parties intended to and did enter into a settlement agreement based upon their communications in open court and via email. The trial court ordered appellant to comply with that agreement. Appellant filed a timely notice of appeal on September 11, 2020.

{¶9} Appellant raises three assignments of error. It's first assignment of error states:

> THE TRIAL COURT ERRED WHEN IT ENFORCED A SETTLEMENT.

**{¶10}** Here, appellant argues that the trial court should not have found there to be a settlement agreement in place, and rather that the court should have interpreted the communications to be settlement negotiations.

**{¶11}** There is a two-fold standard of review that applies to a ruling on a motion to enforce a settlement agreement. Regarding legal questions concerning the interpretation of the settlement agreement, an appellate court is to determine whether the trial court applied an erroneous legal standard or misconstrued the law. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 1996-Ohio-158, 660 N.E.2d 431. Where the question at issue is a factual or evidentiary one, the trial court's findings will not be overturned if there was sufficient evidence to support such a finding. *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist. 2000). This case involves a factual issue – was there a valid settlement offer and acceptance?

**{¶12}** The result of a valid settlement agreement is a contract between parties. *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982). Like any other contract, a settlement agreement requires "'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Wehr v. Petraglia*, 7th Dist. No. Columbiana 14 CO 7, 2016-Ohio-3126, ¶ 16, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16.

**{¶13}** In essence, the formation of a settlement agreement follows the creation of an enforceable contract. In this case, there was clearly an offer in open court by appellees. Appellees' counsel stated: "So if they will pay us $37,500 we will give them a deed for the real estate. They claim to be owed on the order of 27. So they'll be 10 to the good and my clients will not have to fiddle around with this." (Sept. 18, 2019 Tr. 6). In response, the court noted, "At least we have an offer and something to talk about." (Sept. 18, 2019 Tr. 7).

**{¶14}** But there is no evidence of a clear acceptance in this case. Appellees assert, and the trial court found, that an acceptance occurred via the November 23 email from appellant's paralegal. But the paralegal stated:

> We have since been in contact with our Client regarding this offer, and we are reaching out to confirm *if* this is something you would still like to offer.  *If you would still like to offer this,* we will get all necessary documents ready for this and will be in contact regarding the necessary steps for moving this forward.

(Algie Aff., Ex. A; Emphasis added).   These statements are not ones of a clear acceptance.  Instead, these statements indicate that appellees are interested in settling the case and are inquiring if the settlement offer is still on the table.  These statements are merely questioning if, at this point, appellees are still making an offer to appellant.  They require a response from appellees as to what their current position is.

{¶15}   Moreover, in appellees' response to the paralegal's email, they added terms that were not put forth in the settlement offer made at the September 18, 2019 hearing.  At the hearing, appellees' counsel made a settlement offer that appellant would pay $37,500 and they would deed the property to appellant.  (Sept. 18, 2019 Tr. 6).  Counsel did not address any additional terms like closing costs, deed preparation, or real estate taxes.  Yet in the November 25, 2019 email to appellant's counsel, appellees' counsel set out that appellees would pay deed preparation, conveyance fee, and pro-rated real estate taxes while appellant would pay the tax map transfer fee and recording cost.  Counsel also stated that closing costs would be divided equally between the parties.  These terms were never set out in the original offer or agreed to by appellant.

{¶16}   Moreover, the November 25, 2019 email from appellee's counsel to appellant's counsel, concludes by stating, "Please confirm that that is acceptable to your client so we can get about the business of preparing the documents we will need to complete this matter."  Thus, appellees were still asking for an acceptance by appellant.

{¶17}   Given the above communications, there was not clear evidence of an acceptance on appellant's part nor was there clear evidence as to a meeting of the minds on all terms of offer.

{¶18}   Accordingly, appellant's first assignment of error is has merit and is sustained.

{¶19}   Appellant's second assignment of error states:

THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD AN EVIDENTIARY HEARING.

{¶20}   Here, appellant argues that the court did not hold an evidentiary hearing as required.

{¶21}   The trial court did hold a hearing on the motion to enforce the settlement agreement on May 20, 2020.  There was no dispute regarding the evidence at the hearing, as appellant admitted that the emails and communications came from his office.  Both parties made arguments to the court as to whether the evidence demonstrated a settlement agreement.

{¶22}   Thus, appellant's second assignment of error is without merit and is overruled.

{¶23}   Appellant's third assignment of error states:

THE TRIAL COURT ERRED WHEN IT ENFORCED AN AGREEMENT THAT DOES NOT COMPLY WITH THE STATUTE OF FRAUDS.

{¶24}   Here, appellant argues that even if valid, the settlement agreement does not comply with the statute of frauds and therefore should not be upheld.

{¶25}   Given our finding that the parties did not enter into a settlement agreement, appellant's third assignment of error is now moot.

{¶26}   For the reasons stated above, the trial court's judgement is hereby reversed.  This matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.


Waite, J., concurs.
D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**