CHIRCHIGLIA, Appellee,

v.

OHIO BUREAU OF WORKERS' COMPENSATION, Appellant.

[Cite as *Chirchiglia v. Ohio Bur. of Workers' Comp.* (2000), 138 Ohio App.3d 676.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99 C.A. 226.

Decided July 20, 2000.

*Shawn R. Muldowney,* for appellee.

*Betty D. Montgomery,* Attorney General, and *Jack R. Starkoff,* Assistant Attorney General, for appellant.

*Paul J. Gains,* Mahoning County Prosecuting Attorney, *Karen Gaglione,* Assistant Prosecuting Attorney, for the employer.

GENE DONOFRIO, Judge.

Appellant, Administrator, Bureau of Workers' Compensation, appeals a decision of the Mahoning County Court of Common Pleas sustaining appellee Rosemarie Chirchiglia's motion to enforce settlement.

On March 18, 1997, appellee sustained a work–related injury to her right arm, right shoulder, and right knee. That claim was allowed by the Bureau of Workers' Compensation. On May 21, 1997, appellee filed a motion to have her claim amended to include a contusion to her left shoulder. This condition was denied by the Industrial Commission and appellee unsuccessfully pursued an administrative appeal. Subsequently, appellee filed an appeal in the Mahoning County Court of Common Pleas requesting the right to participate for the additional condition.

At a pretrial hearing on October 14, 1998, the parties agreed to settle appellee's claim for $12,000. At the time of the settlement agreement, appellee was receiving temporary total disability. A final settlement agreement and release were prepared outlining the terms of the settlement reached at the pre-trial and forwarded to appellee and her counsel. Appellee and her counsel signed the

agreement on November 20, 1998. On December 18, 1998, the employer's counsel signed the settlement agreement and forwarded it to the Attorney General's Office. On December 28, 1998, the Attorney General's Office properly executed its portion of the settlement agreement and filed it with the Industrial Commission for approval.

The Industrial Commission approved the settlement agreement. However, on March 9, 1999, appellee received a lump-sum settlement check in the amount of only $7,172.10. On May 3, 1999, appellee filed a motion to enforce settlement. On July 28, 1999, the trial court filed a judgment entry ordering appellant to pay appellee $4,827.90, the balance due on her settlement. This appeal followed.

Appellant's sole assignment of error states:

"The trial court erred by failing to give effect to paragraph three (3) of the parties' Final Settlement Agreement and Release which states that compensation received after the date set forth in the introductory clause shall be deducted from the settlement amount."

The provisions of the settlement agreement that are at issue include the introductory clause and paragraph 3. They state:

"It is hereby stipulated and agreed by and between the parties this 14th day of October, 1998, hereto as follows:

" * * *

"(3) Any overpayment in any of the claimant's workers' compensation claims shall be deducted from the amount of this settlement, unless otherwise noted in paragraph (5) below. Overpayment includes, but is not limited to, amounts declared by order of the Bureau of Workers' Compensation or the Industrial Commission of Ohio to be overpaid, as well as any payment of compensation made by the Bureau after the date of this settlement, *as set forth in the introductory clause of this settlement agreement.*" (Emphasis added.)

From October 14, 1998, the date the parties informally reached a settlement agreement and the date reflected in the introductory clause of the final settlement agreement, to March 3, 1999, the date the settlement check was issued, appellee received $4,827.90 in ongoing temporary total disability compensation benefits. Based on its interpretation of the agreement, appellant sent a settlement check to appellee for only $7,172.10, the difference between the settlement amount ($12,000) and the $4,827.90 in benefits appellee received from October 14, 1998 to March 3, 1998.

The trial court rejected appellant's interpretation of the settlement agreement. The court found that the overpayment provision of the agreement, paragraph 3, was governed by the *effective* date of the agreement. The court cited R.C. 4123.65 in support. That section provides that a settlement agreement does not take effect until thirty days after the settlement is approved by the Industrial Commission.

The standard of review to be applied to rulings on a motion to enforce a settlement agreement depends primarily on the question presented. If the question is a factual or evidentiary one, this court has held that the trial court's finding will not be overturned if there was sufficient evidence to support such finding. *Macek v. Ohio Bur. of Workers' Comp.* (Dec. 21, 1999), Columbiana App. No. 99–CO–6, unreported, 1999 WL 1243297 at \*3. However, in a case such as this one where the issue is a question of contract law, reviewing courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.* (1996), 74 Ohio St.3d 501, 502, 660 N.E.2d 431, 432–433. The standard of review is whether the trial court erred. *Id.* Hence, the question before this court is whether the trial court erred as a matter of law in sustaining the motion to enforce the settlement agreement. *Id.*

Settlement agreements are considered contracts and, therefore, their interpretation is governed by the law of contracts. *State v. Butts* (1996), 112 Ohio App.3d 683, 686, 679 N.E.2d 1170, 1171. In *Youngstown State Univ. Assn. of Classified Emp. v. Youngstown State Univ.* (1994), 99 Ohio App.3d 199, 201, 650 N.E.2d 167, 167–168, this court held that "[t]he court need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous." Also, in *Packer, Thomas & Co. v. Eyster* (1998), 126 Ohio App.3d 109, 115, 709 N.E.2d 922, 926, this court held:

"If no ambiguity exists, the terms of the contract must simply be applied without resorting to methods of construction and interpretation. See [*Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146]. The Ohio Supreme Court has held that '[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.' *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272. Additionally, contracts must be read as a whole and interpreted so as to give effect to every provision. *Farmers' Natl. Bank v. Delaware Ins. Co.* (1911), 83 Ohio St. 309, 337, 94 N.E. 834, 839."

Appellee and the trial court focus entirely on the effective date of the settlement agreement. There is no dispute that a settlement agreement does not take effect until thirty days after the settlement is approved by the Industrial Commission. R.C. 4123.65. However, the date that controls the operation of the overpayment provision is the date that is found in the introductory clause of the settlement agreement. The language of the settlement agreement in this regard is clear and unambiguous. See *supra.*

Absent certain language, the overpayment provision arguably could be construed so as to be controlled by the effective date of the settlement agreement. However, when referring to the controlling date of the overpayment provision, the settlement agreement clearly states that the provision is controlled by "the date of this settlement" with the qualifying language "as set forth in the introductory clause of this settlement agreement." The agreement does not state that the overpayment provision is governed by the effective date of the agreement.

As appellant aptly notes, to interpret the overpayment provision so as to be controlled by the effective date of the agreement renders the provision meaningless. By referring to the date set forth in the introductory clause of the settlement agreement, appellant's liability can be set at a fixed amount governed by a date certain. To interpret the overpayment provision so as to be controlled by the effective date of the settlement agreement not only renders the provision meaningless, it defeats one of the purposes of a settlement agreement, to fix liability at a set amount. The effective date of the agreement is not a date certain, as the agreement may be rejected by the claimant up to thirty days after its execution by claimant.

In sum, the terms of the settlement agreement are clear and unambiguous, and the trial court erred by interpreting the overpayment provision contrary to the plain language set forth. Therefore, the trial court erred as a matter of law in sustaining the motion to enforce the settlement agreement.

Accordingly, appellant's sole assignment of error has merit.

The judgment of the trial court is hereby reversed. Judgment is hereby entered in favor of defendant-appellant.

*Judgment reversed.*

VUKOVICH, J., concurs.

COX, J., dissents.

Cox, P.J., dissenting.

I must respectfully dissent from the decision reached by the majority.

I agree with the judgment rendered by the trial court and would likewise find that appellee's motion to enforce the settlement agreement should be sustained. Contrary to the explanation offered by the majority in support of its decision, I do not find the date in the introductory clause of the settlement agreement to be controlling with regard to the operation of the overpayment provision.

Inasmuch as the settlement agreement itself would have no effect, and would thereby fail to constitute a contract, until executed by all parties, I would agree with the trial court that the overpayment provision was governed by the effective date of the settlement agreement. As noted by the majority, R.C. 4123.65 provides that a settlement agreement does not take effect until thirty days after the settlement is approved by the Industrial Commission. Therefore, no contract existed between the parties in this case until thirty days after the Industrial Commission executed the settlement agreement and any payments received by appellee for purposes of temporary total disability during the interim should not be taxed against her by appellant in fulfillment of the settlement agreement.

In support of my position in this matter is a recent case from the Eighth District wherein the injured plaintiff was unable to enforce a settlement reached with the Bureau of Workers' Compensation when the Bureau ultimately failed to approve the settlement agreement. See *Day v. Hunter Temporary Serv., Inc.* (May 25, 2000), Cuyahoga App. Nos. 76323 and 76584, unreported, 2000 WL 680458. *Day* represents the reverse of the case at bar and lends credence to the conclusion that without an executed agreement, there can be no contract upon which to enforce a settlement.

I would affirm the judgment rendered by the trial court.