EILEEN T. GALLAGHER, J.:
{¶ 1} Defendant-appellant, Donnell Mitchell, appeals from the trial court's judgment granting the motion to enforce a settlement agreement filed by plaintiff-appellee, Turoczy Bonding Company. Mitchell raises the following assignments of error for review:
1. The trial court erred in granting appellee's motion to enforce a settlement agreement because it is against the manifest weight of the evidence.
2. The trial court erred in granting appellee's motion to enforce a settlement agreement as contrary to well established case law of the state of Ohio.
3. The trial court erred in granting appellee's motion to enforce the settlement agreement as contrary to public policy and the efficiency of the judicial system.
{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.
*442 I. Procedural and Factual History
{¶ 3} Turoczy is a duly registered bail bonds company located in Cuyahoga County, Ohio. Mitchell was hired by Turoczy as an independently contracted bail bond agent who had authority to write bail bonds through Turoczy.
{¶ 4} While issuing bonds for Turoczy, Mitchell entered into a business arrangement with another bail bond agent to share bail premiums collected from indemnitors. From 2009 through 2011, the nonparty bail bond agent gave Mitchell all of the payments he collected. Mitchell, however, did not turn those premiums over to Turoczy as he was required to do under their independent contract. As a result, the nonparty bail bond agent was never compensated for the commissions he earned from collecting the premium payments. In August 2015, the nonparty bail bond agent obtained a civil judgment against Turoczy for unpaid commissions in the amount of $75,000, plus interest.
{¶ 5} In June 2016, Turoczy filed a complaint against Mitchell, asserting causes of action for breach of contract, contribution, theft, and equitable estoppel. The complaint alleged that the civil judgment rendered against Turoczy was the result of Mitchell's actions. Thus, Turoczy sought damages for the amount of outstanding bond premiums that Mitchell collected from the non-party bail bond agent, but failed to turn over to Turoczy.
{¶ 6} Mitchell filed an answer and counterclaims against Turoczy, asserting causes of action for breach of contract, quasi contract, conversion, and fraud. Mitchell alleged that Turoczy was obligated to pay him $221,057.86 for unpaid commissions, but refused to do so "under a number of false premises, excuses and improper tactics."
{¶ 7} During the pendency of this litigation, counsel for Mitchell and counsel for Turoczy engaged in a series of email communications, including discussions regarding a potential settlement agreement. On June 22, 2017, counsel for Mitchell initiated settlement discussions by asking Turoczy's counsel if his "client [is] ready to stop this fight?" On July 17, 2017, counsel for Turoczy responded:
I don't have any authority to make or accept any offers, but maybe my client might be agreeable to a walk away with both sides paying their own fees. Let me know if I should take this to them.
Later that day, counsel for Mitchell inquired:
I think they should ask us if we will accept walking away * * * are they offering that?
On July 18, 2017, counsel for Turoczy sent the following email:
I wanted to confirm what we talked about earlier today.[1] Your client will agree to a mutual dismissal of all claims, with prejudice. Each party to bear their own costs with a broad release. You can draft the release.
Counsel for Mitchell replied:
Yes * * * provided it's happening ASAP and not after I do a bunch more work.
{¶ 8} On July 24, 2017, counsel for Turoczy contacted Mitchell's counsel to see "how the release is coming along." Counsel for Mitchell responded on July 26, 2017, stating that he "was working on it * * * no worries." However, on July 31, 2017, counsel for Mitchell sent Turoczy an email stating that Mitchell had changed his mind *443 and no longer wished to enter into a settlement agreement. The email provides:
I'm not sure what happened but Donnell has exploded. He was ready to move forward but some side-deals have made him upset. We need to get together and regroup on this. Now, because of their acts (other deals) they're going to need to come up with money. Sadly I thought we'd worked this out but he's [not] taking zero when they're paying out others, it's not fair and he's enraged.
{¶ 9} Approximately one month later, the parties attended a court-ordered mediation hearing. At the conclusion of the hearing, however, the parties were unable to settle the case, and the matter was returned to the trial court's active docket on August 29, 2017.
{¶ 10} On October 3, 2017, Turoczy filed a motion to enforce the settlement agreement. The motion asserted that the parties agreed in writing to mutually dismiss their claims at their own costs. In support of the motion, Turoczy attached copies of the relevant email correspondences exchanged between counsel for Turoczy and counsel for Mitchell in July 2017.
{¶ 11} Mitchell opposed the motion to enforce the settlement agreement, arguing that "there was no 'meeting of the minds' as to the creation of an enforceable settlement agreement." Mitchell maintained that he never signed a written settlement agreement and that the email communications do not constitute an enforceable settlement agreement because they did not contain any clear and definite terms. Mitchell further asserted that Turoczy's voluntary attendance and participation at the subsequent mediation hearing supports his position that while a settlement agreement was discussed, no formal agreement was entered into.
{¶ 12} Upon consideration, the trial court granted Turoczy's motion to enforce the settlement agreement, stating:
Plaintiff's motion to enforce the settlement agreement, filed 10/03/2017, is granted. On July 18, 2017, the parties negotiated settlement agreement through their attorneys by email. The parties ultimately agreed to a mutual dismissal of all claims, with prejudice, each party to bear their own costs. On July 31, 2017, defendant changed his mind about the settlement and attempted to revoke his acceptance. However, once there is a meeting of the minds as to the essential terms for the settlement agreement, a party cannot refuse to proceed due to a mere change of mind. See Mack v. Polson Rubber Co. , 14 Ohio St.3d 34, 36, 470 N.E.2d 902 (1984). This court possesses authority to enforce the settlement agreement that the parties voluntarily entered into. Id. Accordingly, the court enforces the settlement agreement and dismisses all claims with prejudice.
{¶ 13} Mitchell now appeals from the trial court's judgment.
II. Law and Analysis
{¶ 14} Collectively, Mitchell argues in his first, second, and third assignments of error that the trial court committed reversible error by granting Turoczy's motion to enforce the settlement agreement. Mitchell contends the trial court's judgment was against public policy, the manifest weight of the evidence, and established case law because "the email communications between his counsel and counsel for [P]laintiff throughout the month of July do not constitute an enforceable settlement agreement." We consider these assignments of error together for judicial clarity.
{¶ 15} The standard of review to be applied to a ruling on a motion to enforce a *444 settlement agreement depends primarily on the question presented. If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding. Chirchiglia v. Ohio Bur. of Workers' Comp. , 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000). However, in a case such as this one where the issue is a question of contract law, reviewing courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. Id. , citing Continental W. Condominium Owners Assn. v. Howard E. Ferguson, Inc. , 74 Ohio St. 3d 501, 502, 660 N.E.2d 431 (1996). This case presents a legal issue of whether the trial court erred by concluding that the parties' email correspondences constituted a valid settlement agreement.
{¶ 16} Settlement agreements are generally favored in the law. Szmania v. Szmania , 8th Dist. Cuyahoga No. 90346, 2008-Ohio-4091, 2008 WL 3522345, ¶ 8, citing Vasilakis v. Vasilakis , 8th Dist. Cuyahoga No. 68763, 1996 WL 340010 (June 20, 1996). "It is axiomatic that a settlement agreement is a binding contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party." Continental at 502, 660 N.E.2d 431. Thus, a settlement agreement is an issue of contract law.
{¶ 17} "A contract is generally defined as a promise, or a set of promises, actionable upon breach." Kostelnik v. Helper , 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting Perlmuter Printing Co. v. Strome, Inc. , 436 F.Supp. 409, 414 (N.D.Ohio 1976). To be enforceable, a contract must have "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." Id. There must also be a meeting of the minds as to the essential terms of the contract. Id.
{¶ 18} In order for a meeting of the minds to occur, both parties to an agreement must mutually assent to the substance of the exchange. Tiffe v. Groenenstein , 8th Dist. Cuyahoga No. 80668, 2003-Ohio-1335, 2003 WL 1353987, ¶ 25, quoting Restatement of the Law 2d, Contracts, Section 17, at 52 (1981). "In other words, when entering into a contract, the parties must have a distinct and common intention which is communicated by each party to the other." Miller v. Lindsay-Green, Inc. , 10th Dist. Franklin No. 04AP-848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 63, citing Huffman v. Kazak Bros., Inc. , 11th Dist. Lake No. 2000-L-152, 2002 WL 549858. As part of a meeting of the minds, "there must be a definite offer on one side and an acceptance on the other." Garrison v. Daytonian Hotel , 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (2d Dist.1995). Once there is such a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind. Mack v. Polson Rubber Co. , 14 Ohio St.3d 34, 37, 470 N.E.2d 902 (1984).
{¶ 19} " 'To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear,' and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists." Id. , quoting Rulli v. Fan Co. , 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337 (1997). The burden of establishing the existence and terms of a settlement agreement rests on the party asserting its existence. Nilavar v. Osborn , 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998).
{¶ 20} On appeal, Mitchell does not dispute that his counsel had the authority to enter into a settlement agreement *445 on his behalf. However, he contends that the email correspondences with opposing counsel did not create an enforceable settlement agreement because the terms of the agreement were indefinite and were not set forth in a signed, written agreement as contemplated by the parties.
{¶ 21} After careful consideration, we find no merit to Mitchell's contention that the terms of the settlement agreement were vague and indefinite. To the contrary, the email communications clearly reflect a definite offer and acceptance concerning the parties' agreement to mutually dismiss their claims with prejudice at their own cost. Given the implications of a dismissal of all claims at the parties' own cost, no further action or discussion of additional terms was contemplated or required. In short, no unresolved contingencies remained.
{¶ 22} Furthermore, the fact that the parties did not execute a written settlement agreement is not dispositive:
"Where the terms of a contract have in all respects been definitely understood and agreed upon, the failure subsequently to embody such terms in a written contract, as agreed, does not prevent the contract, where no statutory objection interposes, from being obligatory upon the parties. In other words, where all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that it was the understanding that the contract should be formally drawn up and put in writing does not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed ."
(Emphasis added.) Charvat v. Oasis Mtge. , 10th Dist. Franklin No. 02AP-1090, 2003-Ohio-2879, 2003 WL 21291046, ¶ 13, quoting 12 American Jurisprudence, Contracts, Section 25, 522. See also McMillen v. Willys Sales Corp. , 118 Ohio App. 20, 23, 193 N.E.2d 160 (6th Dist.1962) ; Blaney v. Hoke , 14 Ohio St. 292 (1863) ; 17 American Jurisprudence 2d, Contracts, Section 41 (2018).
{¶ 23} In this case, Mitchell correctly notes that Turoczy's settlement offer contemplated a future memorialized agreement. However, as stated, the email communications reflect a definite offer and acceptance, bargained for consideration, and the parties' clear understanding of the settlement terms. Significantly, the terms of the parties' settlement agreement did not expressly state that the agreement would not become binding until it was formally executed. Thus, there is no evidence in this record to suggest that the parties did not intend to be bound by the terms of the settlement until formalized in a written document and signed by both parties. As set forth in counsel for Mitchell's July 31, 2017 email, it was counsel's clear understanding that the parties had reached a settlement agreement and "worked this [case] out" prior to Mitchell's change of heart. In the absence of conditional language stating otherwise, the terms of the written agreement did not lose their binding force merely because they were not reduced to writing as contemplated in the relevant emails. Under these circumstances, we find Turoczy satisfied its burden of establishing a valid settlement agreement.
{¶ 24} Based on the foregoing, we agree with the trial court's determination that Mitchell agreed to the terms and conditions of a valid settlement agreement, only to subsequently change his mind. Accordingly, the trial court did not err in granting Turoczy's motion to enforce the settlement agreement. Mitchell's first, second, *446 and third assignments of error are overruled.
{¶ 25} Judgment affirmed.
ANITA LASTER MAYS, J., CONCURS;
TIM McCORMACK, P.J., DISSENTS WITH SEPARATE OPINION

Evidence concerning the nature and scope of a prior oral conversation was not produced by either party.