[Cite as *Cardicko v. Sweeney*, 2019-Ohio-460.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 107383**

---

**JOLANTA CARKIDO**

PLAINTIFF-APPELLANT

vs.

**RYAN D. SWEENEY, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-877651

**BEFORE:** Jones, J., Blackmon, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** February 7, 2019

**ATTORNEYS FOR APPELLANT**

Lynn A. Lazzaro
Lori A. Juka
Lazzaro Luka Law Offices, L.L.C.
2645 Wooster Road
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEES**

**For Ryan D. Sweeney**

Larry C. Greathouse
Richard C.O. Rezie
Maia E. Jerin
Bulkley Building - Sixth Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

**For Allstate Insurance Company**

Nicholas M. Vento
Schneider Smeltz Spieth Bell L.L.P.
1375 East 9th Street, Suite 900
Cleveland, Ohio 44114


**For Findley D. Coleman**

Eric K. Grinnell
Carr Law Office L.L.C.
5824 Akron-Cleveland Road, Suite A
Hudson, Ohio 44236

LARRY A. JONES, SR., J.:

{¶1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, and thus, under App.R. 11.1(E), we render a decision in a "brief and

conclusionary form."

{¶2} In this appeal, plaintiff-appellant Jolanta Carkido ("Carkido") challenges the trial court's May 30, 2018 judgment granting defendant-appellee Ryan Sweeney's ("Sweeney") motion to enforce the settlement and dismissing Carkido's case. For the reasons set forth below, we reverse and remand.

{¶3} The record demonstrates that on April 17, 2015, Carkido was a passenger in a vehicle driven by defendant-appellee Findley Coleman ("Coleman"), when Coleman got in an accident with Sweeney. Sweeney was cited by the police for the accident. Sweeney was insured under an automobile policy with GEICO Indemnity Company.

{¶4} On April 22, 2015, Carkido sought medical treatment at a hospital emergency room for injuries she sustained as a result of the accident. By written communications dated April 23 and 24, 2015, GEICO contacted Carkido in regard to the accident. In the April 23 letter, the adjuster informed Carkido that the insurance company did not have any of her treatment records or bills relative to the accident, which it needed to process a claim, and asked her to sign a HIPPA release. The April 24 letter stated that Carkido's injuries occurred because she "failed to keep proper lookout and take evasive action to avoid collision." Later in the letter, however, the adjuster attributed 50% of fault for the accident to Sweeney and 50% of fault to Coleman, the driver of the vehicle Carkido was in.

{¶5} On April 28, 2015, Carkido spoke with GEICO representative Christina Beverage. At least part of the conversation was recorded. The pertinent part of the conversation was as follows:

> [Beverage:] The purpose of this recorded conversation is to make a record of the bodily injury settlement of a claim by Ms. Jolanta Carkido for bodily injury resulting from the automobile accident on April 17, 2015 in Strongsville, Ohio

involving an automobile driven by Ryan Sween[e]y and insured under the name of Ryan Sween[e]y; is that correct?

[Carkido:] Um, I wasn't aware of the male driving.   I didn't know his name.

[Beverage:] Okay. * * *[H]e's our insured, Ryan Sween[e]y.

[Carkido:]    Then yes.

[Beverage:] Okay.   Ms. Carkido, we have agreed to settle your bodily injury claim for $2,229.50.   Settling this bodily injury claim means GEICO will pay to you on behalf of Ryan Sween[e]y $2,229.50, and with your acceptance, you will give up any and all rights to file a lawsuit or make any further claim for bodily injury against Ryan Sween[e]y for the accident of April 17, 2015.   Do you agree to accept $2,229.50 in full and final settlement of your bodily injury claim against Ryan Sween[e]y for the accident of April 17, 2015, and release him from any further liability?

[Carkido:] Yes.

[Beverage:] You're agreeing to indemnify and hold harmless Ryan Sween[e]y and GEICO Insurance Company from any and all claims relating to your injury, illness, or disease related to the accident of April 17, 2015; is that correct?

[Carkido:] Yes.

[Beverage:] And is it your desire to settle this claim as discussed and release Ryan Sween[e]y?

[Carkido:] Uh, yes.

[Beverage:]    Okay.   Have you understood all of the questions?

[Carkido:] I think I have.

{¶6} GEICO sent Carkido a check dated April 28, 2015, in the amount of $2,229.50, and requested that Carkido sign and return a release.   Carkido never cashed the checked nor signed and returned the release.

{¶7} In March 2017, Carkido filed this action against Sweeney, Coleman, and Allstate

Insurance Company.[1]   Coleman answered the complaint and asserted affirmative defenses, one of them being that he was not the proximate cause of the accident.   Allstate also answered the complaint and generally denied liability; it filed a cross-claim against Sweeney for subrogation.

{¶8} Sweeney answered the complaint and asserted numerous affirmative defenses.   One of his defenses was that Carkido's claims against him were "barred on the basis that [she] entered into a totally binding and enforceable settlement contract."   Sweeney also cross-claimed against Coleman, claiming that he was the proximate cause of the accident, but sought full indemnification and contribution from Coleman in the event Carkido was awarded a judgment against him (Sweeney).

{¶9} Sweeney filed a motion to enforce the prior settlement agreement.   Carkido opposed the motion.   According to Carkido, only part of the April 28, 2015 conversation with GEICO representative Beverage was recorded.   Carkido claimed that in the other part of the conversation that was not recorded, Beverage did not explain to her that she would be surrogated to her health insurer, Cleveland Clinic Employee Health Plan.

{¶10} Further, Carkido contended that as a layperson, she did not understand the "legal ramifications of the terms 'settlement,' 'release,' * * * the concept of subrogation * * * [and] was not aware of the financial responsibilities that would follow her medical treatment stemming from the motor vehicle accident."   Carkido maintained that a GEICO representative "began to contact her at least one time a day and upwards of two times a day every day in order to negotiate a settlement."   At the time the alleged settlement was negotiated, Carkido had not yet completed her medical treatment, not signed the HIPPA releases, nor obtained a lawyer.

---

[1]Carkido alleged in her complaint that Coleman had "negligently operated his vehicle and caused a collision with Defendant Ryan D. Sweeney's vehicle."   She alleged that Coleman was insured by Allstate under a policy issued to non-party Richard Coleman (presumably a relative of Coleman's) and sought coverage under that policy.

{¶11} The trial court held a hearing on the motion to enforce the settlement agreement. Carkido's attorney told the court that at the time of the alleged settlement, Carkido had not received any bills for her treatment. The bill for the emergency room visit was $4,306.05, and another bill from the treating physician was $1,321. The attorney also reiterated to the court that Carkido had not signed any HIPPA releases and, therefore, GEICO did not have any of her treatment or billing records at the time of the settlement.

{¶12} The court issued a judgment granting Sweeney's motion to enforce the settlement and dismissing Carkido's case against him. The other parties dismissed their claims as well. Carkido now appeals, asserting two assignments of error, in which she collectively maintains that the trial court improperly granted the motion to enforce the settlement agreement because it did not meet the elements required to form a valid contract.

{¶13} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Like any other contract, it requires an offer, acceptance, consideration and mutual assent between two or more parties with the legal capacity to act. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16; *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997). For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement. *Kostelnik* at ¶ 16-17. The essential terms of the agreement must be "'reasonably certain and clear'" and mutually understood by the parties. *Id.*, quoting *Rulli* at *id.* As the *Rulli* court explained:

> "A court cannot enforce a contract unless it can determine what it is. * * * [The parties] must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that

agreement are."

*Rulli* at *id.*, quoting 1 Corbin on Contracts, Section 4.1, at 525 (Rev.Ed.1993). The burden of establishing the existence and terms of a settlement agreement lies with the party who claims it exists. *Turoczy Bonding Co. v. Mitchell*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, ¶ 19, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998).

{¶14} Once a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind. *Turoczy* at ¶ 18 ("Once there is * * * a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind."), citing *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 36-37, 470 N.E.2d 902 (1984).

{¶15} "An oral settlement agreement 'can be enforced by the court in those circumstances where the terms of the agreement can be established by clear and convincing evidence.'" *Shelter v. Shelter*, 9th Dist. Wayne No. 00CA0070, 2001 Ohio App. LEXIS 2289, quoting *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 799, 615 N.E.2d 1071 (10th Dist.1992).

{¶16} The standard of review to be applied when reviewing a ruling on a motion to enforce a settlement agreement depends on the question presented. If the question is a factual or evidentiary one, the reviewing court will not overturn the trial court's finding if there was sufficient evidence to support the finding. *Turoczy Bonding Co.*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173 at ¶ 15, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000). If the issue is a question of contract law, the reviewing court must review the decision de novo to determine whether it is based on an erroneous standard or a misconstruction of the law. *Turoczy* at *id.* Carkido contends, and we agree, that the issue here presents a question of law and, therefore, is subject to a de novo review.

{¶17} According to Carkido, there was no meeting of the minds as to the essential terms of the alleged settlement agreement. She maintains that her responses recorded during the call indicate her "hesitancy to settle and uncertainty as to whether she understood the essential terms of the alleged settlement agreement." Specifically, as mentioned, Carkido maintains that she did not understand the following essential terms: (1) that she would become subrogated to Cleveland Clinic Employee Health Plan; (2) whether GEICO would pay the cost of her subrogation to her health plan; (3) the total cost of her medical treatment due to the accident as of the time of the alleged settlement; and (4) whether GEICO would pay for future medical costs associated with the accident. Carkido cites *Noroski v. Fallet*, 2 Ohio St.3d 77, 442 N.E.2d 1302 (1982), in support of her position; we find it instructive.

{¶18} In *Noroski*, the plaintiff was involved in an automobile accident with the defendant. The plaintiff sustained injuries as a result of the accident, causing him to incur medical expenses and lost wages. Approximately two weeks after the accident, an adjuster for the defendant's insurer contacted the plaintiff by phone to discuss his damages as a result of the accident. The plaintiff informed the adjuster that he had incurred $429.76 in property damage. Thereafter, the adjuster sent the plaintiff a check, which included the sums of $429.76 for the property damage and a $25 allowance for the anticipated medical expense of x-rays for a total of $454.76. The adjuster also sent a release form and asked the plaintiff to sign and return it. The plaintiff neither signed and returned the release nor did he cash the check.

{¶19} Approximately two months later, the plaintiff mailed copies of medical bills totaling $119.10 and a copy of the previously issued uncashed check to the insurance company. Several weeks after that, the plaintiff and the adjuster spoke again by phone; part of the conversation was recorded. The relevant part of the conversation was as follows:

[Adjuster:]  Do you agree that the draft I will be sending you in the total amount of $754.40 is the full and complete settlement for your bodily injuries as well as the property damage resulting from this accident?

[Plaintiff:]  Yes.

*Id.* at 78-79.

{¶20} As a result of that conversation, the insurance company sent another check to the plaintiff for $299.64, all but $100 of which was for property damage and medical expenses. Nothing appeared on the check indicating that it was a complete settlement and release of all claims.  The plaintiff cashed that check, as well as the first one, which together totaled $754.40.

{¶21} Thereafter, the plaintiff incurred substantial additional medical expenses and lost wages, which the insurance company refused to cover.  The plaintiff brought an action, and the insurance company raised full and complete settlement as an affirmative defense.  After a hearing, the trial court ruled that, although the adjuster had failed to follow the company's policy for a telephone release, the recorded conversation nonetheless constituted a valid and enforceable release of all claims arising out of the accident.  The Sixth Appellate District affirmed the trial court.  *Noroski v. Fallet*, 6th Dist. Ottawa No. OT-81-5, 1981 Ohio App. LEXIS 10352.

{¶22} On appeal to the Ohio Supreme Court, the issue was framed as "whether the recorded telephone conversation relied upon by [the insurance company] constitutes a valid and enforceable release."  *Noroski*, 2 Ohio St.3d at 79, 442 N.E.2d 1302.  The court answered that it did not.  Specifically, the court found that, based on its "examination of the record and the facts surrounding the purported release," "no meeting of the minds occurred in this case."  *Id.*  The court noted that during the telephone conversation there was "no reference to the term 'release,' speaking instead of 'full and complete settlement.'"  *Id.*  The court reasoned that the plaintiff, a civil engineer, "had little familiarity with the legal ramifications of 'settlement' or 'release' * * *."

*Id.*

{¶23} Moreover, in addition to failing to follow its own protocol for obtaining a telephone release, the court found that the insurance company's "piecemeal manner in which the recorded statement was made by the adjuster renders unavailable further clarifying statements concerning the meaning of the purported release which may have been made [during] the conversation." *Id.* at 80.

{¶24} This case presents similarities to *Noroski*. Specifically, Carkido never executed a release (or cashed the check for that matter); GEICO failed to follow its own policy of obtaining the medical records and any bills associated with Carkido's damages prior to settling (and Carkido did not have any indication what her damages were at the time of the alleged settlement); the record seems to indicate that Carkido had little familiarity with the legal process of settling a claim; and, according to Carkido, there were portions of her conversation with Beverage that were not recorded. Additionally, the alleged settlement occurred a mere 11 days after the accident and under circumstances that evidence the company's confusion about who was at fault for the accident.

{¶25} In light of the above, the trial court erred in granting the motion to enforce the settlement agreement. The two assignments of error are sustained.

{¶26} Judgment reversed; case remanded.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules

of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR