[Cite as *Wilson v. Pride*, 2019-Ohio-3513.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| KILEY WILSON, ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 107793 |
| v. | : | |
| SPENCER PRIDE, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** August 29, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-883441

***Appearances:***

Fred D. Middleton, *for appellants.*

Ciano & Goldwasser, L.L.P., Andrew S. Goldwasser, and
Sarah E. Katz; Law Office of John J. O'Shea, P.L.C., and
John J. O'Shea, *for appellees.*

LARRY A. JONES, SR., J.:

{¶ 1} This case stems from an automobile accident that occurred in 2013 when a Mack truck, driven by defendant-appellee Spencer Pride ("Pride"), collided with a car driven by plaintiff-appellant Kiley Wilson. Wilson sustained injuries that required surgery on both shoulders. The trial court enforced a settlement agreement

between the parties and this appeal followed. Finding merit to the appeal, we reverse and remand the case to the trial court.

## Procedural History and Facts

{¶ 2} In 2015, Wilson filed a complaint against Pride and his employer, Ferris Process of Cleveland (collectively referred to as "Pride"). Also named as plaintiffs in the complaint were two minors who were riding in Wilson's vehicle at the time of the accident and Wilson's wife, Quavae Wilson ("Quavae" and the plaintiffs are at times collectively referred to as "Wilson"). Wilson dismissed his complaint but refiled it in 2017 against the same parties. In his complaint, Wilson alleged: (1) Pride was at fault for the accident; (2) Pride's employer was responsible for Pride's negligence; (3) Wilson incurred over $14,000 in medical expenses and would continue to incur expenses; (4) each minor incurred $1,162 in medical expenses; (5) Wilson incurred property damage in the amount of $5,355.42 and car rental expenses totaling $1,057.84; and (6) a loss of consortium claim on behalf of Quavae.[1]

{¶ 3} Trial for the case was set for Monday, September 10, 2018. Attorneys for the parties engaged in settlement negotiations by phone the Thursday and Friday prior to trial, September 6 and 7. Appellee's attorney claimed that the parties did, in fact, reach a settlement agreement on September 7, agreeing to settle the case for $25,000. Approximately 20 minutes after the parties allegedly agreed on a $25,000

---

[1] Quavae's claim was later dismissed pursuant to Civ.R. 41.

settlement, appellee's attorney sent an email to the court, copying appellant's attorney, to inform the court that the parties had reached a settlement. Upon receipt of the email, appellant's attorney phoned the court, informing the court that the parties had not reached a settlement.

{¶ 4} Wilson subsequently filed a motion to vacate the settlement. Pride responded with a motion to enforce the settlement agreement. The settlement agreement was never reduced to writing.

{¶ 5} In his motion to vacate the settlement agreement, Wilson stated that his attorney never agreed to the $25,000 offer because there had not been a "complete agreement as to the settlement for the children because [appellant's] counsel never had any discussion with the parents of the minor children regarding the settlement or authority to settle their case." In the motion to enforce, Pride argued that a settlement agreement had been reached and Wilson should be bound by their oral agreement.

{¶ 6} On September 10, the court issued a journal entry stating that the parties had reached a settlement and ordered the parties to file a dismissal entry within 30 days of the entry. The court also scheduled a hearing on the parties' competing motions for the next day, September 11.

{¶ 7} The matter proceeded to a hearing on September 11. Appellee's attorney, Wilson, and the father of the two minor plaintiffs testified under oath and were subject to cross-examination.

{¶ 8} The following evidence was adduced at the hearing.

**{¶ 9}** Appellee's attorney testified that he contacted appellant's attorney on September 6, 2018, and extended a settlement offer for $25,000. Appellant's attorney countered with a demand for $75,000 to settle all claims.

**{¶ 10}** Later that day, appellee's attorney again phoned appellant's attorney and told the attorney that he (appellee's attorney) had spoken with the court's staff attorney and discovered that the court ruled on several pretrial motions in Pride's favor. Appellee's attorney requested that counsel for the appellant take the settlement offer back to his client, stating that the offer might "no longer be on the table" if appellee had to incur the cost of trial preparation.

**{¶ 11}** Specifically, appellee's attorney testified that he called appellant's counsel on the morning of September 7 and

> informed him that the $25,000 settlement offer was still on the table and we would appreciate it if he would get back to us as soon as possible because we were in preparation for trial and due to the costs that the company was going to incur over the weekend, I would not — could not guarantee that that money would still be available on [the day of trial].

**{¶ 12}** Appellee's attorney testified that appellant's attorney called him two hours later, around 12:30 p.m., and agreed to the $25,000 settlement offer. According to appellee's attorney, appellant's attorney proposed that the settlement funds be apportioned as follows: $21,000 to Wilson and $2,000 to each minor child. Appellant's counsel then asked counsel for appellee about the Medicaid lien — Wilson's injuries totaled over $40,000 in medical bills, approximately $15,000 of which Medicaid paid the Cleveland Clinic. Appellee's attorney testified:

I informed him [appellant's attorney] that I would need to check with the company regarding how they wanted to handle the Medicaid lien, because Medicaid paid certain medical bills and that I would call him back regarding the Medicaid lien after I spoke to [co-counsel] about how the company wanted to handle that particular matter, and I also told him that I would confirm in writing the settlement.[2]

{¶ 13} Appellee's counsel admitted appellant's attorney asked for a return call regarding the Medicaid issue, but did not think it warranted further discussion with regard to the proposed settlement: "I considered it to be how the company wanted to treat the Medicaid payment on the settlement check."

{¶ 14} On cross-examination, appellee's attorney insisted that although appellant's attorney had asked for a return call to discuss the Medicaid payment and he had not made the return call, any discussion of the Medicaid payments was not "a further discussion of the settlement." Appellee's attorney testified:

I did not consider it to be a further discussion of the settlement. I considered it to be how the company wanted to treat the Medicaid payment on the settlement check. In other words, whether the company was going to include Medicaid on the check or going to write a separate check to Medicaid, how that was going to be handled.

{¶ 15} Appellee's attorney testified that he informed appellant's attorney that he was going to confirm the settlement in writing but did not tell appellant's attorney that he planned on emailing the court to say that the case had been settled. Appellee's attorney further admitted that he emailed the court without opposing counsel's knowledge. According to appellee's attorney, appellant's attorney called him back shortly after they agreed to settle the case to say that Wilson had "changed

---

[2]The settlement was never reduced to writing.

his mind" and was not going to accept the $25,000 settlement offer. Appellee's attorney testified that counsel for appellant never indicated during settlement negotiations that he did not have authority to accept a settlement offer on behalf of his clients or that he needed to discuss the terms of the settlement with his clients prior to accepting an offer.

{¶ 16} Appellee's attorney stipulated during the hearing that appellant's counsel called the court's staff attorney shortly after receiving appellee's email notice to the court, and stipulated that appellant's counsel told the staff attorney that his client was not willing to go forward with the settlement and no settlement had been reached.

{¶ 17} Wilson testified that he did not discuss a $25,000 settlement offer with his attorney, would not accept a settlement in that amount, had outstanding medical bills, and wanted to proceed with trial. The father of the two minor plaintiffs testified that neither he nor the children's mother agreed to a $4,000 settlement, would not settle for that amount, and wanted to proceed with trial.

{¶ 18} Following the hearing, the court issued an opinion denying Wilson's motion to vacate and granting Pride's motion to enforce the settlement agreement:

> Plaintiffs failed to present any evidence to rebut [appellee attorney's] testimony that [appellant's attorney] accepted the $25,000 settlement offer on behalf of his clients. [Appellant's attorney] chose not to testify. Neither of Plaintiffs' witnesses were parties to the telephone call between [opposing counsel] on Friday 9/7/2018 at 12:30 p.m. Plaintiffs' motion to vacate settlement is not evidence that plaintiffs can rely upon to support [appellant attorney's] version of events.

* * *

Plaintiffs presented no evidence regarding the phone call that took place between [opposing counsel] on Friday 9/7/2018 at approximately 12:30 p.m. The only evidence before the court regarding this phone call is the testimony of [appellee's attorney], leaving no factual dispute for this court to resolve.

The parties have entered into a binding settlement agreement because there was a meeting of the minds as to the essential terms of the contract. There was sufficient particularity in the oral settlement agreement to form a binding contract. A party cannot refuse to proceed due to a mere change of mind. Plaintiffs' counsel accepted the defendants' offer of settlement as the agent of all plaintiffs and therefore had apparent authority to finalize the terms of the settlement agreement.

{¶ 19} It is from this decision that Wilson appeals, raising the following assignments of error for our review:

I. The court erred when it ordered settlement based on "undisputed evidence" despite plaintiff's denial they entered an agreement for settlement of the case and refused to have a hearing to consider plaintiff's filed motions to vacate the order of settlement.

II. The court erred by excluding the direct, circumstantial evidence and stipulated evidence that plaintiff never accepted an offer or made the oral contract.

III. The court erred when it forced a settlement on parties who did not accept or approve the settlement.

IV. The court erred when it failed to find the alleged agreement did not state all the necessary terms to create a binding contract.

**Law and Analysis**

{¶ 20} In the first assignment of error, Wilson claims that the trial court erred when it granted Pride's motion to enforce without considering Wilson's

motion to vacate the settlement agreement. Specifically, Wilson argues that the trial court ignored his motion and only considered Pride's motion. We disagree.

{¶ 21} Before the hearing started, the trial court noted on the record: "[Appellant's attorney] filed a motion to vacate settlement of the case and closing case judgment entry. On behalf of the defense, there was a motion to enforce the settlement[,] * * * we are going to hear arguments from both parties in this case."

{¶ 22} The trial court proceeded to do just that — hear arguments from both parties. Wilson's attorney decided not to testify in support of his motion to vacate, telling the court, "I'd rather not [testify] as the counsel." In its September 13, 2018 journal entry granting Pride's motion, the trial court stated "Defendant's motion to enforce settlement, filed 09/10/2018 is granted. Plaintiff's motion to vacate journal entry of settlement, filed 09/09/2018, is denied."

{¶ 23} Although Wilson contends that the court failed to consider his motion, it is clear that the trial court considered both motions and found Wilson's motion to be without merit.

{¶ 24} Accordingly, the first assignment of error is overruled.

{¶ 25} In the second assignment of error, Wilson contends that the trial court erred by failing to consider evidence that his attorney did not accept the $25,000 settlement agreement.

{¶ 26} Wilson claims that the trial court should have considered statements his attorney made in his motion to vacate as "persuasive evidence" because the trial court stated at the hearing that the "hearsay rules" would be relaxed. We disagree.

Unlike the testimony given at the hearing, the statements appellant's attorney made in his motion to vacate were not under oath or subject to cross-examination and were not in affidavit form. Wilson's attorney chose not to testify at the hearing, telling the court "I'd rather not [testify] as the counsel."

{¶ 27} Under Ohio law, arguments of counsel are not evidence to be considered by the trier of fact. *See Grove v. Fresh Mark, Inc.*, 156 Ohio App.3d 620, 626, 808 N.E.2d 416 (8th Dist.2004) ("Passionate argument of counsel is not evidence.") In this case, each party had an opportunity to present witnesses and submit exhibits into evidence. Wilson's counsel chose not to testify. Thus, he chose not to submit his version of events as factual evidence in this case.

{¶ 28} In light of the above, the second assignment of error is overruled.

{¶ 29} In the third assignment of error, Wilson contends that the trial court erred in enforcing the settlement agreement. In the fourth assignment of error, Wilson contends that the settlement agreement was not enforceable because "there was no meeting of the minds." We consider these assignments of error together.

{¶ 30} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. *Rayco Mfg. v. Murphy*, 2018-Ohio-4782, 117 N.E.3d 153, ¶ 32 (8th Dist.), citing *Continental W. Condominium Unit Owners Assn. v. Ferguson*, 74 Ohio St.3d 501, 660 N.E.2d 4317 (1996). Like any other contract, a settlement agreement requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act. *Rayco* at *id.* The burden of establishing the existence and terms of a settlement agreement lies with

the party who claims it exists. *Id.*, citing *Turoczy Bonding Co. v. Mitchell*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, ¶ 19, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998).

{¶ 31} An oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 15, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 39, 285 N.E.2d 324 (1972). Oral settlement agreements may be binding and enforceable even though the settlement terms are negotiated without the trial court's assistance. *Walland v. Rinehart,* 8th Dist. Cuyahoga Nos. 51935 and 52672, 1987 Ohio App. LEXIS 6805, 4 (Mar. 26, 1987). "The agreement need not be in writing and no funds are required to be exchanged in order to establish the existence of the settlement contract." *Id.*

{¶ 32} In *Ivanicky v. Pickus*, 8th Dist. Cuyahoga No. 91690, 2009-Ohio-37, this court noted:

> It is preferable that a settlement be memorialized in writing. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. Terms of an oral contract may be determined from words, deeds, acts, and silence of the parties.   * * *
>
> To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear * * *.

(Citations omitted). *Id.* at ¶ 9, quoting *Kostelnik* at ¶ 15, 17.

{¶ 33} A settlement agreement may also be enforced regardless of whether it has been reduced to writing so as long as the terms of the agreement can be

established by clear and convincing evidence. *Carkido v. Sweeney*, 8th Dist. Cuyahoga No. 107383, 2019-Ohio-460, ¶ 15, citing *Shetler v. Shetler*, 9th Dist. Wayne No. 00CA0070, 2001 Ohio App. LEXIS 2289, 3 (May 23, 2001). Clear and convincing evidence "is that which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Shetler* at *id.*, citing *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 122, 568 N.E.2d 1222 (1991).

{¶ 34} This court has held that that "[o]nce a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind." *Rayco*, 2018-Ohio-4782, 117 N.E.3d 153, at ¶ 31; s*ee also Turoczy Bonding Co.*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, at ¶ 18 ("Once there is * * * a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind."). This court has also recognized that when a client authorizes his or her attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it. *Rayco* at *id.*; *see also Bromley v. Seme*, 2013-Ohio-4751, 3 N.E.3d 1254, ¶ 25 (11th Dist.) (holding that a party may be bound by the conduct of his or her attorney in reaching a settlement).

{¶ 35} The standard of review applied when reviewing a ruling on a motion to enforce a settlement agreement depends on the question presented. *Carkido* at ¶ 15; *Rayco* at ¶ 29. If the question is a factual or evidentiary one, the reviewing court will not overturn the trial court's finding if there was sufficient evidence to support the finding. *Turoczy* at ¶ 15, citing *Chirchiglia v. Ohio Bur. of Workers'*

*Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000). If the issue is a question of contract law, the reviewing court must review the agreement de novo to determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Turoczy* at *id.* Wilson raises a factual issue on appeal: Did Wilson's attorney, on behalf of the plaintiffs, agree to the defendants' settlement offer? Wilson also raises a legal issue, which we review de novo: Did the parties agree upon all the essential terms of the alleged oral settlement agreement? *See Kinnett v. Corporate Document Solutions, Inc.*, 1st Dist. Hamilton No. C-180189, 2019-Ohio-2025, ¶ 27.

{¶ 36} Pride contends that Wilson is bound by the settlement agreement because Wilson's attorney had full authority to settle the claims on Wilson's behalf and Wilson belatedly changed his mind about accepting the settlement offer. According to Wilson, he did not change his mind. Rather, there was no meeting of the minds as to the essential terms of the settlement agreement, specifically, the parties had not agreed on what would be done with the Medicaid reimbursement.

{¶ 37} It is uncontested that the attorneys for the parties discussed a $25,000 settlement offer. Appellant's attorney questioned the effect the Medicaid reimbursement would have on the settlement, and appellee's counsel conceded he never "got back" to appellant's counsel on the matter. Appellee's counsel also never told appellant's counsel that he would inform the court of the settlement; he only told appellee's counsel that he would confirm the settlement in writing, which he never did. As soon as appellant's attorney discovered that appellee's counsel had

emailed the court to say the parties had reached a settlement, appellee's counsel phoned the court to say that there had not, in fact, been an agreement.

{¶ 38} Wilson and the father of the two injured minors testified that they had not agreed to settle for $25,000. Although "[a] party cannot avoid a settlement that was negotiated through counsel by claiming that his [or her] attorney lacked actual authority to enter into the settlement," *Rayco*, 2018-Ohio-4782, 117 N.E.3d 153, at ¶ 31, Wilson testified that he only told his attorney "to fight as well as you can and let me know." Wilson further argues that his attorney called Pride's attorney on September 7, 2018, to ask for clarification with regard to Medicaid reimbursement, not to accept the $25,000 settlement offer.

{¶ 39} Pride relies on this court's holding in *Rayco*, where this court upheld the trial court's enforcement of a settlement agreement. *Rayco* is distinguishable from the case at bar. In *Rayco*, the settlement agreement was "evidenced by writings on all sides, including the mutual exchange of drafts of the written settlement agreement that set forth the essential terms of the settlement." *Id.* at ¶ 40. Here, the alleged agreement was never reduced to writing. As Pride stipulated to during the hearing, as soon as appellant's attorney became aware of appellee's email to the court, appellant's attorney called the court to say that no settlement had been reached.

{¶ 40} Other Ohio cases we reviewed involve either settlement agreements that had been reduced to writing, *see Kostelnik*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, parties who testified that they initially agreed to the oral settlement

offer but then changed their mind, *see Brilla v. Mulhearn*, 168 Ohio App.3d 223, 2006-Ohio-3816, 859 N.E.2d 578 (9th Dist.); in-court settlement agreements, *see Kolar v. Shapiro*, 11th Dist. Lake No. 2007-L-148, 2008-Ohio-2504, ¶ 21, or settlement agreements where there was a passage of time between the alleged acceptance and revocation of the acceptance, s*ee, generally*, *Ivanicky*, 8th Dist. Cuyahoga No. 91690, 2009-Ohio-37.

{¶ 41} In light of the above, there was insufficient evidence to support the trial court's finding that the parties had reached a settlement. Based on the parties' testimony and the trial court record, the terms of the alleged agreement were not stated with sufficient particularity and Wilson's assent to those terms were not established by clear and convincing evidence. A more logical explanation based on the evidence before this court is that Pride offered to settle for $25,000 and Wilson needed more clarification as to what effect the Medicaid reimbursement would have on the settlement amount — would Pride's employer reimburse Medicaid or would the Medicaid reimbursement come out of the settlement proceedings? This is evidenced by counsel for appellee's testimony at the hearing:

> I considered [the discussion] to be how the company wanted to treat the Medicaid payment on the settlement check. In other words, whether the company was going to include Medicaid on the check or going to write a separate check to Medicaid, how that was going to be handled.

{¶ 42} We find that, contrary to Pride's claim, the effect a $15,000 Medicaid reimbursement would have on a $25,000 settlement offer was a material part of the

agreement.[3] Pride never offered that clarification and instead emailed the court stating the case had been settled a mere 20 minutes after Wilson's alleged acceptance. Once Wilson discovered Pride's email, he contacted the court to clarify that no settlement had been reached. Thus, there was no meeting of the minds. In reaching this conclusion, we have also considered the amount of time that passed between the offer of settlement on September 6 and the alleged acceptance on September 7 and the amount of time, a couple of hours, that passed between the alleged acceptance, appellee counsel's email to the court that the offer had been accepted, and appellant attorney's call to the court to dispute that an agreement had been reached.

{¶ 43} In light of the above, the trial court erred in granting Pride's motion to enforce the settlement agreement and denying Wilson's motion to vacate the settlement agreement.

{¶ 44} The third and fourth assignments of error are sustained.

{¶ 45} Judgment reversed; case remanded for proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[3]Using a 30% contingency fee as an example, if Wilson settled the case for $25,000, with $4,000 going to the minor claimants and his attorney receiving 30% of the total settlement amount, Wilson would recover around $14,700, which is less than what was owed to Medicaid.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
RAYMOND C. HEADEN, J., CONCUR